UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 05-80689-CIV-PAINE/JOHNSON

ALLEN FOX,

    Plaintiff,

vs.

MORRIS JUPITER ASSOCIATES, LTD.,

    Defendant.

_____/

**NIGHT BOX FILED**

JUN 1 9 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT. /FLL

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**COMES NOW** Defendant, MORRIS JUPITER ASSOCIATES, LTD., through the undersigned, and files this Motion for Summary Judgment pursuant to Rule 56, Fed.R.Civ.P., or to Dismiss pursuant to Rule 12(b), Fed.R.Civ.P., based on a lack of subject matter jurisdiction, and states:

Plaintiff brought this action under Title III of the Americans with Disabilities Act, 42 U.S.C. Section 12181, et. seq. (hereinafter "Title III" or "ADA" or "the Act") for injunctive relief and attorneys fees and costs. Defendant moves for summary judgment or to dismiss based on a lack of subject matter jurisdiction on the grounds that Plaintiff lacks standing and cannot establish that this Court has subject matter jurisdiction; that Plaintiff cannot credibly show he intends to visit the Defendant's premises in the future and, therefore, be subjected to a real and concrete and particularized future harm; and, additionally, that Plaintiff has purposefully availed himself of alleged barriers merely in order to bring this suit as a vehicle to recover attorney's fees.



## STATEMENT OF MATERIAL FACTS

Defendant owns a shopping center known as Commerce Village Plaza (the "Center") located at 75 East Indiantown Road, Jupiter, Florida.  The Center includes two anchor tenant spaces occupied by clothing stores (Ross and T.J. Maxx) and a number of smaller tenant spaces including a Radio Shack and a Cingular Wireless store.  The Center was purchased by Defendant in 2004.

Allen Fox, ("Fox") has been named Plaintiff in more than one hundred (100) ADA Title III suits since the year 2003.  (See Exhibit "A").  Plaintiff, who uses a wheelchair, (see Deposition of Allen Fox, attached as Exhibit "B," page 9) resides at 9765 Apache Boulevard, West Palm Beach, Florida.  (Fox, 4).  Plaintiff's residence is located approximately twenty five miles southwest of the Center.  (Fox, 10).  Plaintiff works at a Florida Power & Light station located in Juno Beach, Florida  (Fox, 12) which, he estimates, is located "six or seven miles" south of the Center.  (Fox, 33).

Plaintiff claims he has visited the Center on more than one occasion with his wife (Fox, 5).  Plaintiff indicates he has encountered barriers to access at the Center, including thresholds at the doorways to some of the tenant spaces, notably Radio Shack.  While visiting the Center with his wife, such thresholds did not present a problem because of her assistance.  (Fox, 5-6).  On one occasion - on an unknown date - Fox traveled to the Center alone, intending to patronize Radio Shack.  (Fox, 28).  When he reached the door, however, he chose not to attempt to enter because he feared being unable to negotiate the threshold in his wheelchair.  (Fox, 29-30).  Fox spoke to nobody at Radio Shack that day or anywhere else within the Center.  (Fox, 30).  He instead contacted his attorney.  (Fox, 30).  Fox has never communicated with anyone at any of the tenant

2

spaces or management at the Center, nor provided or attempted to provide any type of notice prior to filing the instant suit.  (Fox, 18).

Radio Shack and Cingular Wireless are the only tenants at the Center that Fox might choose to re-visit in the future.  (Fox, 19).

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file...show that there is no genuine issue as to any material issue of fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56.  A factual dispute is not enough to defeat a properly plead motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In deciding a motion to dismiss, the Court is not required to assume allegations in a complaint are true.  Rosenkrantz v. Markopoulos, 254 F.Supp.2d 1250, 1251 (M.D. Fla. 2003); see also Goodman v. Sipos, 259 F.3rd 1327, 1331 n. 6 (11th Cir. 2001)(factually based attacks on subject matter jurisdiction go beyond the pleadings and permit testimony to be considered).

Plaintiff bears the burden of demonstrating that the Court has jurisdiction over this case. Lamb v. Charlotte County, 2006 WL 1118910 (M.D. Fla.); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980).  Courts may dismiss cases pursuant to Rule 12(b)(1) upon finding that the Plaintiff's claims are "clearly immaterial, made solely for the purpose of obtaining jurisdiction or are wholly unsubstantiated and frivolous."  Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990); Lamb v. Charlotte County, 2006 WL 1118910 (M.D. Fla.).

3

## **MEMORANDUM OF LAW**

### I.  STANDING AND LACK OF SUBJECT MATTER JURISDICTION

"In order to satisfy Article III's standing requirements, a Plaintiff must show he has suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Brother v. Tiger Partner, LLC, 331 F.Supp.2d 1368, 1372 (M.D. Fla. 2004); Friends of the Earth, Inc. v. Laidlaw Envtl Servs., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).  "In addition, because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges... a real and immediate - as opposed to a merely conjectural or hypothetical - threat of future injury." Brother, at 1373; Shotz v. Cates, 256 F.3rd 1077, 1081 (11th Cir. 2001).

Past exposure to illegal conduct does not in itself indicate a present case or controversy regarding injunctive relief if unaccompanied by any continuing present adverse effects.  An intent to return "someday' is not enough to support a finding of the actual or imminent injury that such cases require.  Lujan v.Defenders of Wildlife, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

On the issue of his intent to return to the Center, Fox testified that the only reason he would have gone was to visit the Radio Shack and/or the Cingular Wireless stores.  (Fox, 19). He claimed it was "possible" he would have gone to a Chinese restaurant at the Center also but that, to date, he has never been there. (Fox, 19-20).  This level of intent is not enough to invoke the Court's subject matter jurisdiction in this injunction action or to properly assert standing. Such an intent to return someday is not enough under Lujan.

KUBICKI DRAPER • One East Broward Boulevard , Suite 1600 • Fort Lauderdale, Florida 33301 • Tel. (954) 768-0011

Fox's testimony regarding his plans to return to the Center lacks credibility in light of the location of the Center relative to both his residence and place of work and, more tellingly, by the volume and apparent "drive-by" nature of the more than 100 Title III suits he has filed in the past couple of years. Fox lives approximately 25 miles from the Center. There are a number of Radio Shack and Cingular Wireless stores closer to his home as well as a number more convenient to his place of work. (See composite Exhibit "C").

Fox testified that less than a week before his March 6, 2006 deposition, he traveled to the Center from his place of work at the FP&L station in Juno Beach. (Fox, 6). He claimed he intended to visit the Radio Shack store. (Fox, 6). This was long after he had filed suit asserting that the Radio Shack store was inaccessible. He testified that he had been inside that Radio Shack previously, although he could not recall when last. (Fox, 6-7). However, when he had last visited his wife accompanied him. (Fox, 7). He claimed, initially, that this most recent visit was the first time he had been at the Center without his wife. (Fox, 8). Later, however, when asked why he had filed suit, he recalled another visit where he had gone to the Center alone. (Fox, 28). Interestingly, although he initially testified that the paths of travel were inaccessible (Fox, 7-8); however, when later recalling this other previous visit he claimed he parked and traveled an accessible route from the parking lot to the Radio Shack front door before deciding the threshold was too much of an obstruction to try to enter. On that occasion, presumably, neither the parking nor the accessible paths prevented his access, but only the threshold. Despite having gone to the trouble of driving to the Center, parking and making his way to the door and, in fact, even

5

opening the door to Radio Shack, he never attempted to communicate with anyone at Radio Shack or the Center that day or since.

Fox testified he traveled from his work address to the Center.  In order to do so, , Fox would first have to drive "six or seven miles" north as he estimated into Jupiter, only to have to return the estimated "twenty five plus" miles southwest to his residence address.  It is important to note, and the Court should judicially notice, that  per composite Exhibit "D", there are at least two other Radio Shack stores located on a fairly direct route from Fox's work address to his residence.  Fox testified that it was "much more convenient to for me to go to that Radio Shack [at the Center] than travel all the way back to the one on the way home" (Fox, 14) because the other is located "in the Palm Beach Mall (later he referred to it as the Gardens Mall) on the second floor, all the way in the middle of the mall, which is a very large distance to travel." (Fox, 14).[1]  However, Fox should well know that of the many Radio Shack stores in the area, at least one is located in a strip mall at 3101 PGA Boulevard in Palm Beach Gardens, (Exhibit "D") which is located  between Fox's work and residence, which would not require him to drive north into Jupiter in order to visit a Radio Shack store.

Along with the facts of this case, (which support a finding that Fox visited the property - if he did at all - only as a pretext to file suit), the Court should also consider the totality of the lawsuits Fox has filed on the issue of whether he has the requisite intent to return and, therefore, whether he can satisfy standing and subject matter jurisdiction to seek injunctive relief.  See Molski v. Mandarin Touch, 347 F.Supp.2d 860, 862 (C.D.Cal.2004)(Title III plaintiff found to be

---

[1] Contrary to Fox's testimony, the Radio Shack at the Gardens Mall is located directly above one entrance, directly outside of which is located accessible parking.  It is neither "in the middle" nor a "quarter mile" walk. (see Exhibit "E") .

KUBICKI DRAPER • One East Broward Boulevard , Suite 1600 • Fort Lauderdale, Florida 33301 • Tel. (954) 768-0011

"vexatious" based on number of similar suits which the court found, in totality, were abusive and harassing and tantamount to a pattern of extortion.)

Even a cursory review of the properties Fox has targeted in his one hundred plus Title III suits (see Exhibit "F") reveals the "drive-by" nature of his litigation tactics. As a result of his filings, clusters of consecutive case numbers have been assigned to multiple cases located in discrete geographic areas, some nowhere near Fox's residence or workplace. For example, the first eleven lawsuits on the "Pacer"website print-out of Fox's cases target properties located in Stuart, Florida, which is at least forty miles from Plaintiff's residence. The instant suit happens to be the first in a series of four Fox filed against properties on East Indiantown Road in Jupiter. Bear in mind, Fox testified that he traveled to the Center after work with the specific intent to shop at Radio Shack. Fox would, presumably, have this Court believe he had equally legitimate and specific  business elsewhere on East Indiantown Road in Jupiter in and around the same time. Such a possibility (which is not sufficient to support standing or subject matter jurisdiction) might be more plausible absent the preponderance and pattern of all of his other Title III suits.

It is crucial to note that the test is not whether Fox might someday return to the Center, but rather whether he has a specific and concrete intent to return. In Lamb v. Charlotte County, 2006 WL 1118910 (M.D. Fla. 2006), a disabled individual sued a county alleging he was unable to access a public library. The county asserted that the Plaintiff lacked a specific intent to return to the Defendant property. The Court dismissed the case, finding that the facts did not give rise to the inference that future unlawful discrimination would occur. The Court found that Lamb lacked the requisite "concrete and specific intent" to return to the property. The Lamb Court found persuasive, among other things, that the plaintiff lived approximately 75 miles from the

7

defendant facility, that there were other libraries located closer to the plaintiff's residence, and that the plaintiff - like Fox - had filed many similar lawsuits throughout a large geographic area.

The case of Rodriguez v. Investco, 305 F.Supp.2d 1278 (M.D. Fla. 2004), involved similar facts. Like Lamb, the Rodriguez Court concluded that a disabled plaintiff who lived a great distance from the defendant facility failed to evince a specific and credible intent to return and entered judgment in favor of the defendant. The Rodriguez court held that one cannot purposely avail himself of an alleged ADA violation merely in order to file suit. The court determined that the Plaintiff "a professional pawn in an ongoing scheme to bilk attorney's fees from the Defendant."

While both Lamb and Rodriguez admittedly involved greater geographic distances between the plaintiff's residences and the defendants' properties than in the instant case, the test for subject matter jurisdiction set out in these cases depends not on geography. Rather, the test is whether Plaintiff can establish a credible "concrete and specific intent" to return. "Might" is not enough under Lamb and Rodriguez.. In fact, under the Lamb analysis a South Floridian who frequents theme parks might more credibly establish a concrete intent to return to a favorite hotel in Orlando than one who, like Fox, claims he will continue to drive right past three or four Radio Shacks on the way to another one, a town or two away.

Accordingly, the Defendant asks the Court to enter final summary judgment in its favor or to dismiss this case with prejudice and to award attorney's fees to the Defendant or to reserve jurisdiction to entertain Defendant's motion for fees.

## II. ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant also moves, in the alternative, for entry of partial summary judgment as to: (A)

8

Plaintiff's standing to seek injunctive relief beyond the complained of barriers to access and (B) Plaintiff's claim for attorney's fees.

(A)   The Court should find that Plaintiff has standing to seek injunctive relief only relative to those areas from which he claims he was denied access and should grant partial summary judgment in Defendant's favor on all other claims.  <u>Brother v. CPL Investments.</u>  In this case, Fox testified he would probably return to the Center only to patronize Radio Shack and, perhaps, Cingular Wireless. The issue with access, according to Fox, was an impermissible threshold at the front door at each of these tenant spaces.   Accordingly, based on Plaintiff's testimony, the Court should limit Fox's claim for injunctive relief to those two complained of tenant spaces as well as the exterior accessible paths of travel and parking.  As it is, Plaintiff is seeking injunctive relief relative to the entire Center, including tenant spaces such as nail salons he has, obviously, never visited. Such a grant of partial summary judgment would have the effect of streamlining discovery and trial and obviating a number of pending discovery disputes.  In addition, such a grant of partial summary judgment would eliminate the need for more costly litigation relative to the Defendant's financial status because Defendant would stipulate that, if the case were so streamlined, it would dismiss its affirmative defenses relating to whether the requested modifications were readily achievable.

(B) The Court should also enter partial summary judgment in favor of Defendant on the issue of Plaintiff's claim for attorneys fees because Plaintiff never attempted to give the Defendant any type of notice prior to bringing suit.  Although Title III does not require notice as a pre-condition to filing this type of suit, fees are discretionary.  The trend among courts confronting this issue is to disallow fees where, as in the instant case, a plaintiff failed to notify the property

9

owner prior to filing suit.  For example, in <u>Doran v. Del Taco</u>, 373 F.Supp.2d 1028 (C.D. Southern Division), the Court held that the failure to give notice by a Title III Plaintiff who prevailed as to injunctive relief precluded an award of fees.  Although the Court reiterated that notice was not a pre-requisite to suit, it recognized and joined the trend towards declining to award fees in the absence of notice.  The Court wrote that it was a "proper exercise of discretion and common sense in an ADA case...to require, as a pre-requisite to recovering attorneys fees, a pre-litigation unambiguous warning notice to the defendant and a reasonable opportunity to cure the violation."  <u>Id</u>., at 1033.

Similar rulings are found in <u>Macort v. Checker Drive-In Restaurants, Inc.</u>, (Not reported in F.Supp.2d, 2005 WL 332422 (M.D. Fla.) and <u>Association for Disabled Americans, Inc. v. Integra</u>, 385 F.Supp.2d 1272 (M.D. Fla.2005) where the courts found it proper and appropriate to disallow fees in Title III lawsuit where, like here, the plaintiffs made no effort to achieve voluntary compliance by giving pre-suit notice.  One court asked, "Why would an individual like Plaintiff be in such a rush to file suit when only injunctive relief is available?  Wouldn't conciliation and voluntary compliance be a more rational solution?  Of course it would but pre-suit settlements do not vest plaintiffs' counsel with an entitlement to attorneys fees...The current ADA lawsuit binge is driven by economics - that is, the economics of attorneys fees."  <u>Rodriguez v. Investco</u>,305 F.Supp.2d at 1282.  Accordingly, the Court should enter partial summary judgment in favor of Defendant on the issue of fees.

WHEREFORE, the undersigned respectfully requests this Honorable Court to enter an Order granting final summary judgment in favor of Defendant or to enter an Order dismissing this matter with prejudice based on a lack of subject matter jurisdiction.  Alternatively, the

10

undersigned requests an Order granting partial summary judgment in favor of Defendant limiting

Plaintiff's standing so that he may seek in this lawsuit injunctive relief only relative to the tenant

spaces he encountered as well as the exterior and common spaces necessary for access to such

tenant spaces as well as on Plaintiff's claim for attorney's fee.  The undersigned also seeks any

additional relief the Court deems appropriate under the circumstances.

## **CERTIFICATE OF SERVICE**

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed this

day of June, 2006 to all counsel on the attached service list.

> KUBICKI DRAPER
> Attorneys for Defendant
> 1 East Broward Boulevard
> Wachovia Tower- Suite 1600
> Ft. Lauderdale, Florida 33301
> Direct Line: (954) 713-2335
>
> By:
>
> MICHAEL J. CARNEY

H:\LIBRARY\0056134\P\1CM4417.WPD

11

## <u>SERVICE LIST</u>

Cynthia K. Mitchell, Esq.
Aurilio & Assoc., P.A.
The Summit Bldg., Suite 320
840 U.S. Highway One
North Palm Beach, FL 33408
(561)627-5300

# Case Selection Page

| Case Number | Title | Filing Date | Last Updated |
|---|---|---|---|
| 2:04cv14197 | Fox v. Stuart Center | 07/27/04 | 05/03/05 |
| 2:04cv14199 | Fox v. San Joaquin Corp. | 07/27/04 | 01/25/06 |
| 2:04cv14200 | Fox v. Sherwin Williams | 07/27/04 | 03/01/05 |
| 2:04cv14201 | Fox v. Federal Plaza Assoc. | 07/27/04 | 11/17/04 |
| 2:04cv14202 | Fox v. Plaza South Partners | 07/27/04 | 10/04/05 |
| 2:04cv14211 | Fox v. Scott Group,Inc. | 08/02/04 | 10/18/05 |
| 2:04cv14212 | Fox v. Indian Street | 08/02/04 | 01/18/05 |
| 2:04cv14213 | Fox v. Wolfe | 08/02/04 | 02/09/05 |
| 2:04cv14214 | Fox v. Salerno Village | 08/02/04 | 02/02/05 |
| 2:04cv14215 | Fox v. Mc Neil Estates,Inc. | 08/02/04 | 02/04/05 |
| 2:04cv14216 | Fox v. Super Stop Petroleum | 08/02/04 | 08/23/05 |
| 9:03cv80219 | Fox v. Abbey Road Plaza | 03/24/03 | 10/08/03 |
| 9:03cv80220 | Fox v. 4500 PGA Blvd. | 03/24/03 | 01/30/04 |
| 9:03cv80358 | Fox v. Ed Napleton Jupiter | 05/02/03 | 01/07/04 |
| 9:03cv80416 | Fox v. Gayle A. Woods Trust | 05/22/03 | 01/27/04 |
| 9:03cv80417 | Fox v. Lake Washington | 05/22/03 | 12/30/03 |
| 9:04cv80069 | Fox v. MDC PGA Plaza, LLC | 01/27/04 | 07/26/04 |
| 9:04cv80070 | Fox v. High Rock Lake Co | 01/27/04 | 05/12/04 |
| 9:04cv80071 | Fox v. San Vincente Investm | 01/27/04 | 07/22/04 |
| 9:04cv80072 | Fox v. Del Viso, LLC | 01/27/04 | 08/12/04 |
| 9:04cv80363 | Fox v. 2000 Pbl Venture | 04/16/04 | 08/09/04 |
| 9:04cv80364 | Fox v. Ichiban Properties | 04/16/04 | 08/26/04 |
| 9:04cv80365 | Fox v. Westchester Square | 04/16/04 | 07/29/04 |
| 9:04cv80366 | Fox v. Cross Country Associ | 04/16/04 | 11/22/04 |
| 9:04cv80367 | Fox v. Fu Hwa Iv | 04/16/04 | 09/15/04 |

**EXHIBIT A**

| | | | |
|---|---|---|---|
| 9:04cv80550 | Fox v. P.B.G.S.,LTD | 06/18/04 | 01/26/05 |
| 9:04cv80551 | Fox v. South Atlantic Pro | 06/18/04 | 09/22/04 |
| 9:04cv80552 | Fox v. Sil-Fir Corporation | 06/18/04 | 05/13/05 |
| 9:04cv80553 | Fox v. Okee Plaza,Ltd. | 06/18/04 | 01/18/05 |
| 9:04cv80554 | Fox v. BCI Associates,llc | 06/18/04 | 12/22/04 |
| 9:04cv80555 | Fox v. Ethan Allen,Inc. | 06/18/04 | 02/08/05 |
| 9:04cv80556 | Fox v. Royal Petroleum, Inc | 06/18/04 | 12/03/04 |
| 9:04cv80598 | Fox v. 12 th Street Associa | 06/30/04 | 02/28/05 |
| 9:04cv80599 | Fox v. Okee,LLC | 06/30/04 | 01/26/05 |
| 9:04cv80600 | Fox v. Forum Square | 06/30/04 | 02/18/05 |
| 9:04cv80601 | Fox v. Metropolitian Life I | 06/30/04 | 12/13/05 |
| 9:04cv80602 | Fox v. Carrabba's Italian | 06/30/04 | 03/16/05 |
| 9:04cv80603 | Fox v. Forum Shoppes,Inc. | 06/30/04 | 01/27/05 |
| 9:04cv80701 | Fox v. R & L Partnership | 07/27/04 | 03/06/06 |
| 9:04cv80762 | Fox v. Wheelock Family | 08/18/04 | 05/13/05 |
| 9:04cv80763 | Fox v. Royal Plaza North | 08/18/04 | 09/22/04 |
| 9:04cv80764 | Fox v. Ives Rentals,LLC | 08/18/04 | 01/13/05 |
| 9:04cv80765 | Fox v. Andrade Associates | 08/18/04 | 11/30/04 |
| 9:04cv80766 | Fox v. Second Chance Ventu | 08/18/04 | 02/28/05 |
| 9:04cv80767 | Fox v. Village Royale | 08/18/04 | 03/08/05 |
| 9:04cv80799 | Fox v. Keller | 08/27/04 | 04/29/05 |
| 9:04cv80800 | Fox v. G & D Eyecare | 08/27/04 | 07/15/05 |
| 9:04cv80801 | Fox v. Payne | 08/27/04 | 12/15/04 |
| 9:04cv80802 | Fox v. Denny's Realty,Inc. | 08/27/04 | 10/06/05 |
| 9:04cv80803 | Fox v. Kimco West Palm | 08/27/04 | 06/28/05 |
| 9:04cv80804 | Fox v. L,N&N Corporation | 08/27/04 | 01/03/05 |
| 9:04cv80810 | Fox v. Burger King | 08/30/04 | 05/04/05 |

| 9:04cv80811 | Fox v. RPBE,Inc. | 08/30/04 | 01/07/05 |
| 9:04cv80812 | Fox v. L N & N Corporation | 08/30/04 | 01/03/05 |
| 9:05cv80092 | Fox v. P.B.G.S., Ltd | 02/03/05 | 08/15/05 |
| 9:05cv80126 | Fox v. Riviera Trading Inc | 02/14/05 | 10/05/05 |
| 9:05cv80127 | Fox v. Divall Insured Incom | 02/14/05 | 03/31/05 |
| 9:05cv80238 | Fox v. Elmhurst Shoppes | 03/21/05 | 09/26/05 |
| 9:05cv80239 | Fox v. Lake Park Shoppes | 03/21/05 | 01/04/06 |
| 9:05cv80277 | Fox v. WOODHAVEN, LLC | 04/04/05 | 09/08/05 |
| 9:05cv80278 | Fox v. MPI COUNTRY GROVE | 04/04/05 | 01/06/06 |
| 9:05cv80316 | Fox v. T & B Services,Inc. | 04/12/05 | 07/25/05 |
| 9:05cv80317 | Fox v. Delgado | 04/12/05 | 09/28/05 |
| 9:05cv80318 | Fox v. Florescue & Andrews | 04/12/05 | 05/22/06 |
| 9:05cv80382 | Fox v. Cromwell Properties | 05/03/05 | 12/09/05 |
| 9:05cv80383 | Fox v. RB SITGO,LLC. | 05/03/05 | 03/21/06 |
| 9:05cv80384 | Fox v. CMBB,Inc. | 05/03/05 | 08/25/05 |
| 9:05cv80687 | Fox v. Potter | 07/29/05 | 11/10/05 |
| 9:05cv80688 | Fox v. Karins Imports,Inc. | 07/29/05 | 02/22/06 |
| 9:05cv80689 | Fox v. Morris Jupiter | 07/29/05 | 05/30/06 |
| 9:05cv80755 | Fox v. Branch | 08/19/05 | 02/28/06 |
| 9:05cv80756 | Fox v. Fishermans Wharf | 08/23/05 | 06/06/06 |
| 9:05cv80757 | Fox v. Jupiter Marketplace | 08/19/05 | 02/27/06 |
| 9:05cv80894 | Fox v. Spiegel | 10/03/05 | 05/11/06 |
| 9:05cv80895 | Fox v. Spiegel | 10/03/05 | 05/25/06 |
| 9:05cv80896 | Fox v. North Village Realty | 10/03/05 | 04/24/06 |
| 9:05cv80924 | Fox v. Sunset Centres of | 10/12/05 | 06/12/06 |
| 9:05cv80925 | Fox v. Sovereign TB LLC | 10/12/05 | 04/19/06 |
| 9:05cv80926 | Fox v. Meiselman | 10/07/05 | 04/24/06 |

Case Selection Page

| | | | |
|---|---|---|---|
| 9:05cv80927 | Fox v. LW JOG S.C. Ltd. | 10/12/05 | 05/24/06 |
| 9:05cv80928 | Fox v. Florimar Boynton | 10/12/05 | 05/31/06 |
| 9:05cv80929 | Fox v. Buttonwood Plaza LTD | 10/12/05 | 03/27/06 |
| 9:05cv80960 | Fox v. Shoppes of Atlantis | 11/01/05 | 02/22/06 |
| 9:05cv80961 | Fox v. Warbanks Properties | 11/01/05 | 06/05/06 |
| 9:05cv80962 | Fox v. Boynton Plaza | 11/01/05 | 06/08/06 |
| 9:05cv80963 | Fox v. Kenney | 11/01/05 | 05/15/06 |
| 9:05cv80964 | Fox v. Sage III,Inc. | 11/01/05 | 06/08/06 |
| 9:05cv81085 | Fox v. GLM Holding LLC. | 12/06/05 | 04/24/06 |
| 9:05cv81086 | Fox v. Sage Properties Inc. | 12/06/05 | 03/16/06 |
| 9:05cv81087 | Fox v. Lake Worth Center LL | 12/06/05 | 05/15/06 |
| 9:05cv81088 | Fox v. Nathan Properties | 12/06/05 | 03/24/06 |
| 9:06cv80279 | Fox v. Carefree Park Corp. | 03/28/06 | 06/08/06 |
| 9:06cv80280 | Fox v. Deltex Realty Corp. | 03/28/06 | 06/12/06 |
| 9:06cv80281 | Fox v. Lake Worth Waterside | 03/28/06 | 05/01/06 |
| 9:06cv80282 | Fox v. Global Management | 03/28/06 | 06/12/06 |
| 9:06cv80283 | Fox v. Lantex Realty Corp. | 03/28/06 | 06/12/06 |
| 9:06cv80364 | Fox v. Elwill Associates | 04/13/06 | 06/09/06 |
| 9:06cv80365 | Fox v. Smith | 04/13/06 | 06/07/06 |
| 9:06cv80366 | Fox v. Denny's Realty,Inc. | 04/13/06 | 05/31/06 |
| 9:06cv80367 | Fox v. Regenstreif | 04/13/06 | 06/06/06 |
| 9:06cv80368 | Fox v. Devon Investment,Inc | 04/13/06 | 06/06/06 |
| 9:06cv80412 | Fox v. KG Associates | 04/24/06 | 06/01/06 |
| 9:06cv80413 | Fox v. Lovak,Inc. | 04/24/06 | 05/23/06 |
| 9:06cv80414 | Fox v. Congressional Develo | 04/24/06 | 06/02/06 |
| 9:06cv80415 | Fox v. Vultaggio | 04/24/06 | 04/25/06 |
| 9:06cv80416 | Fox v. ADF Property Company | 04/24/06 | 06/02/06 |

**There were   106   matching case records found.**

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/14/2006 11:09:26 | | | |
| PACER Login: | kd0384 | Client Code: | 0056134 |
| Description: | case select | Search Criteria: | FOX, ALLEN |
| Billable Pages: | 2 | Cost: | 0.16 |

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:05cv80689

Florida Bar No. 044326



ALLEN FOX,

      PLAINTIFF,

VS.

MORRIS JUPITER ASSOCIATES, LTD,


      DEFENDANT.

_____/


DEPOSITION OF ALLEN FOX

THE PLAINTIFF

TAKEN BY

THE DEFENDANT


DATE:  MARCH 7, 2006

TIME:  10:20 A.M. - 11:00 A.M.



EXHIBIT
B

Page 2

```
 1                    I N D E X

 2                     DIRECT   CROSS   REDIRECT   RECROSS

 3    MARCH 7, 2006

 4    ALLEN FOX

 5

 6        BY MR. CARNEY    4

 7        BY MR. AURILIO              32

 8

 9

10

11

12

13    SIGNATURE LETTER to COUNSEL - Page              42

14    ERRATA SHEET(S)(to be forwarded later - Page    41

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          The deposition of ALLEN FOX, the plaintiff in

 2     the above-entitled and numbered cause, was taken

 3     before me, Raquel Robinson, Court Reporter, Notary

 4     Public for the State of Florida at Large, at Aurilio &

 5     Associates, Inc, 840 U.S. Highway 1, in the City of

 6     North Palm Beach, County of Palm Beach, in the State

 7     of Florida, on Wednesday, the 7th day of March, 2006,

 8     on behalf of the defendant in the above-entitled

 9     action pending in the above-named court.

10          The appearances at said time and place were as

11     follows:

12

13          APPEARING ON BEHALF OF THE PLAINTIFF:

14

            Samuel Aurilio, Esq.
15          Cynthia Mitchell, Esq.
            AURILIO & ASSOCIATES, P.A.
16          The Summit Bldg.
            840 U.S. Highway One
17          North Palm Beach, Fl 33408

18

19

20          APPEARING ON BEHALF OF THE DEFENDANT:

21

            MICHAEL J. CARNEY, ESQ.
22          Kubicki Draper
            1 East Broward Boulevard
23          Wachovia Tower - Suite 1600
            Ft. Lauderdale, Fl 33301
24

25
```

Page 4

1    THEREUPON,

2                          ALLEN FOX,

3    being by me first duly sworn to tell the whole truth as

4    hereinafter certified, testified as follows:

5                       DIRECT EXAMINATION

6    BY MR. CARNEY:

7        Q    Sir, good morning, for the record can you give

8    us your name and your current address, please?

9        A    My name is Allen Fox, A-l-l-e-n, 9765 Apache

10   Boulevard, West Palm Beach, Florida 33412.

11       Q    Now, have you ever given a deposition before?

12       A    Several years ago.

13       Q    Okay.  You may recall the procedure from back

14   then, but I'll go through it right now.  There's some

15   very simple rules that we both will benefit by following

16   in this deposition.  And the first one is that I want you

17   to be clear, when I ask you a question, what it is I'm

18   asking.  Okay?

19       A    Uh-huh.

20       Q    Meaning that if you have any questions or

21   you're not sure what I'm getting at, just stop me.  Okay.

22   If I trick you, it's by accident.  All right.  This is my

23   opportunity to get some information about this claim from

24   you.

25       A    Okay.

1    Q      So please make it very clear, if you don't

2  understand where I'm going, if you don't understand what

3  I'm asking, stop me and we'll clarify.

4    A      Okay.

5    Q      Use words rather than nonverbal communication

6  methods.  You already violated that once when you went

7  uh-huh.  And I understood that, but it doesn't work on

8  paper.  So if in this deposition on occasion I ask you to

9  say "Is that a yes?"  It's not to be impolite, it's just

10  for the clarity of the record.

11    A      Okay.

12    Q      If you need to take a break, tell me.

13    A      I will.  I'll raise my hand.

14    Q      Give me good advance warning.  This is neither

15  a quiz or an endurance test.

16    A      Okay.

17    Q      I don't expect this will take very long.

18           Now, sir, you have brought a claim against my

19  client, which is a shopping center in Jupiter.  Do you

20  know the address of that shopping center?

21    A      75 Indiantown Road.

22    Q      You went and visited the shopping center,

23  correct?

24    A      I've been there many times.

25    Q      Okay.  Do you know how many times you've been

1    there?

2    A        No.

3    Q        All right.  When were you last there?

4    A        Last week, as a matter of fact.

5    Q        For what purpose?

6    A        I attempted to go to Radio Shack.

7    Q        There's a Radio Shack there?

8    A        Yes, there is.

9    Q        Were you able to go to Radio Shack?

10   A        No.

11   Q        The reason I follow up is 'cause you said you

12   attempted to.

13   A        Okay.

14   Q        Had you been to that Radio Shack before?

15   A        Yes, I have.

16   Q        How many times?

17   A        I couldn't tell you how many.

18   Q        Have you been inside the Radio Shack?

19   A        Yes, I have.

20   Q        More than once?

21   A        Yes.

22   Q        Can you recall when it was that you were last

23   at the Radio Shack?

24   A        No, sir.

25   Q        In the year 2005, perhaps, or would it have

1   been further distant in the past?

2       A       It would have to be somewhere around 2004,

3   approximately.

4       Q       All right.  And I hear you when you

5   approximate, and that's okay.  I'm not going to ask you

6   to guess if you don't know.

7       A       I won't.

8       Q       All right.  Now, when you were last in the

9   Radio Shack at the defendant location, was it different

10  than it's currently set up?

11      A       I don't think so, but again, it's been a long

12  period of time, so I could not say exactly.

13      Q       But you indicated that most recently when you

14  attempted to access the Radio Shack you could not; is

15  that correct?

16      A       That's correct.

17      Q       Why not?

18      A       Well, the last time I was at the Radio Shack

19  before this, I had my wife with me to help me.  There is

20  a rather large threshold there, which in order for me to

21  get over, I have to be able to hold the door and maneuver

22  over that threshold, which I would not be able to do.

23  That's number one.

24              Number two, the parking lot is arranged in

25  such a way where I have to travel a half a block just to

1    be able to get on to the sidewalk.

2         Q      On an accessible path of travel?

3         A      That's correct.  There are many accessible

4    paths, however, they all run into curbs.

5         Q      What's your wife's name?

6         A      My wife's name is Gail, G-a-i-l.

7         Q      Do you reside together?

8         A      Yes, sir.

9         Q      All right.  Now, was this the first time you

10   had visited the defendant premises without your wife?

11        A      Yes.

12        Q      All right.  Were you familiar with the layout

13   of the defendant premises when you more recently went

14   there by yourself?

15        A      The premises, meaning...

16        Q      The layout of the premises.  You've

17   indicated --

18        A      Are you referring to Radio Shack or the

19   property itself?

20        Q      The entire property.

21        A      Yes, I'm familiar with the property.

22        Q      All right.  You were familiar with it because

23   you'd been there a number of times?

24        A      Yes, I had.

25        Q      Now, in those number of times prior to this

1    most recent attempt to go to the Radio Shack, you had

2    taken note of issues with parking and passive travel it

3    sounds like, correct?

4         A     That's correct.

5         Q     Did you go with anyone to the defendant

6    shopping center when you most recently went?

7         A     No.

8         Q     You were alone?

9         A     I was alone.

10        Q     You can drive a vehicle?

11        A     Yes, sir.

12        Q     For the record, what are your disabilities?

13        A     I am a polio victim.  I've had a minor stroke

14   recently.  And I have gone from crutches to basically

15   residing almost completely in the wheelchair over the

16   last five or six years, because of that and the fact that

17   I injured my shoulder and I've lost a lot of strength in

18   my arms and whatnot.  So it's very difficult for me to

19   move around without the wheelchair any distance to speak

20   of at all.

21        Q     Are you doing okay relative to the stroke that

22   you sustained?

23        A     Yes, it was a mini stroke.  But I still have

24   numbness and whatnot on one side.

25        Q     Well, good luck with that.  Now, when you most

1    recently went to the defendant shopping center, did you

2    attempt to access any units other than Radio Shack?

3       A      No, because I was not able to get, basically,

4    to get, I didn't want to -- let me rephrase that.  I

5    didn't want to go through the trouble of going from the

6    parking lot and trying to find an access to the sidewalk.

7    It would have involved -- the parking lot was fairly

8    full.  The handicap spots are all basically blocked from

9    access to the sidewalk, the ones that were able.  And the

10   others I noticed were the same way.  So I would have had

11   to get out and travel a fairly substantial distance to

12   get to the sidewalk.

13          The other place I wanted to go to was

14   Cingular, which is right there as well.  But the same

15   problem exists, the threshold is there.  And again,

16   there's no ramp right there that I can access, that I can

17   have access to readily.

18      Q      When you say Cingular, you're referring to a

19   Cingular Wireless retail store of some sort?

20      A      Yes, sir.

21      Q      Now, approximately, I'm sure you don't have a

22   mathematic certainty on this one, but how far is it from

23   your residence to the defendant shopping center?

24      A      That would have to be probably twenty-five

25   miles plus.

1      Q      When you've gone in the past with your wife,

2    what's been the purpose?  Is it for -- and let me clarify

3    a little further.

4            When I go shopping with my wife, it's always

5    to go to the shops she wants to go to.  Is that the case

6    when you and your wife go out?  Did you go to this

7    facility, the defendant shopping center, because she

8    wanted to go to a particular shop, or was it you?  And I

9    don't mean to be flippant about it.

10     A      No, my wife met me up there because we have

11   family that lives on Hood Road.  And we went to Hood

12   Road.  I needed a spatial battery for my remote on my

13   car.  And Radio Shack is the only place that sells them.

14   And since we were up in that area.  It was more

15   convenient to go there than to travel all the way back

16   and fight with another mall to get inside and things of

17   that sort.  So, since we were already at a family

18   function, it was much easier to just do that.

19     Q      And you knew there was a Radio Shack there

20   because you had previously shopped at that shopping

21   center?

22     A      Yes, sir.

23     Q      All right.  What other stores in that shopping

24   center on Indiantown Road have you and your wife

25   patronized over the years?

Page 12

1      A      Well, my wife would always patronize the shoe

2   store.  My wife has always patronized the shoe store.

3   Any one that exists in the area, she's going to

4   patronize.  I basically, since I did, in fact, work up in

5   the Jupiter area, which is fairly close, that was the

6   Radio Shack I would go to whenever I wanted anything such

7   as batteries or any specialty items that Radio Shack has.

8   So she would usually meet me up there, because there is,

9   in fact, there used to be a restaurant up there that we

10  used to go to that we happen to like quite a bit.

11     Q      Now, on this most recent occasion when you, as

12  you've indicated, went to Radio Shack and couldn't access

13  that store, did you come from your home or from a family

14  function?

15     A      I came from work.

16     Q      Where do you work?

17     A      I work at Florida Power and Light up in Juno

18  Beach.

19     Q      Still?

20     A      Yes, sir.

21     Q      What's your position there?

22     A      I'm a draftsman.

23     Q      How long have you been a draftsman there?

24     A      I've been with FP & L for just about two years

25  now.  To be technical, I don't actually work for FP & L,

1    I work for a company called QC Data.

2        Q       Q as in the letter and the C?

3        A       Yes, QC Data, and we are direct contractors to

4    FP & L, Florida Power and Light.

5        Q       Have you been with QC Data longer than --

6        A       The same amount of time.

7        Q       All right.  Now, and I don't think I asked you

8    this question already:  Do you know when it was that you

9    most recently attempted to go to the Radio Shack store at

10   the defendant shopping center?

11            MR. AURILIO:  He did answer that.

12   BY MR. CARNEY:

13       Q       And when was it?

14       A       The other day, last week.

15       Q       It was just the other day?

16       A       Yes.

17       Q       If you said that earlier, I missed it.  I

18   apologize for that.  Now, this suit has been in

19   litigation for some time now, and it was certainly in

20   litigation when you went or attempted to go to the Radio

21   Shack just the other day, correct?

22       A       Yes, sir.

23       Q       Were you familiar with the threshold outside

24   the Radio Shack?

25       A       Yes, sir.

Page 14

1     Q      Were you familiar with, generally, how the

2   accessible paths of travel are laid out at the defendant

3   shopping center?

4     A      Yes, sir.

5     Q      Why then did you try to access the property by

6   yourself without your wife?

7     A      Well, I had not spoken to anybody as to

8   whether or not anything had been changed.  I figured I

9   would go and see if there was another way to get in,

10  another accessible route, since I was in the area.

11             And it's much more convenient for me to go to

12  that Radio Shack, than travel all the way back to the one

13  on the way home, which is much more difficult, really, to

14  get into.  This would be much easier if there was a means

15  of egress.

16    Q      What is the one near your home?

17    A      Well, the Palm Beach Mall, but in fact the

18  Radio Shack in the Palm Beach Mall is on the second

19  floor, all the way in the middle of the mall, which is a

20  very large distance to travel.  Whereas this one, one

21  could park their car in the handicap spots and go across.

22  It's only maybe sixty feet from the handicap spots to the

23  front door.

24    Q      Your problem with accessing the Radio Shack at

25  the mall isn't that it precludes it, it's just that it's

1    a long way to go?

2       A       Right.

3       Q       Here your problem was a threshold?

4       A       It's a threshold, and the ability to go from

5    the parking lot to the sidewalk.

6       Q       Okay.  Did you actually get out of your

7    vehicle the other day when you were there?

8       A       No.

9       Q       So, the threshold never posed an actual

10   barrier to your getting in, the problem was you didn't

11   want to or think that you could, to be fair, negotiate

12   the accessible paths of travel?

13      A       Well, one could see the threshold as well,

14   that it's quite high.  And one has to hold the door and

15   also manipulate this chair over, which is not possible.

16      Q       But you didn't attempt to do it?

17      A       No, but I can tell when the threshold is high

18   enough to give me a problem, it's pretty obvious.

19      Q       But you knew that as you drove, presumably,

20   down Indiantown Road or US-1, towards the defendant

21   shopping center, correct?

22      A       Did I know that the threshold was there?

23      Q       Yes.

24      A       Well, I went to see if it was still there.  I

25   didn't know for sure that it was.

1      Q      Okay.  Did you look around to see the status

2   of the property while you were there?

3      A      I had to drive through the parking lot.

4      Q      And while you did, you're a litigant in a case

5   involving that shopping center, and you're aware of that,

6   correct?

7      A      Yes, sir.

8      Q      I mean, you're the named plaintiff in this

9   case?

10     A      Yes, sir.

11     Q      And as the named plaintiff, and I don't know,

12  nor am I asking whether you hold yourself out as an

13  expert.  I know there's another expert involved in this

14  case.  But did you look around to just generally do an

15  amateur survey of the property, vis-a-vis the allegations

16  made in this complaint on your behalf?

17     A      Did I look around?

18     Q      Yes, sir.

19     A      Well, as I drove through the parking lot I

20  looked, sure.

21     Q      And what did you see?

22     A      Well, I saw no ramps to speak of that were

23  accessible from the parking lot.  I saw a variety of

24  stores that did not have access in the way that they had,

25  that it would appear to be a fairly large threshold.

1   There were a few, to be quite honest with you, that were

2   not a problem, TJ Maxx for one, that were fairly simple

3   to get into.  But most of the ones that I would even

4   attempt to go into there's no way.  If I could even

5   egress on to the sidewalk.

6           And after working all day.  I'm not about to

7   go park somewhere that's a block away and have to ride

8   across the sidewalk and this parking lot.

9       Q       You went there on a workday?

10      A       Yes, after work.

11      Q       Today is Wednesday.  You said it was just the

12  other day.  Can you reconstruct what day it was that you

13  actually went there?

14      A       No, I couldn't tell you.  It was last week, as

15  I said, but I can't tell you what day it was.

16      Q       You work Monday through Friday?

17      A       I work Monday through Saturday most of the

18  time.

19      Q       It wasn't Saturday?

20      A       No.

21      Q       Do you know what time it was that you went

22  there?

23      A       It would have to be after six.  Well, not

24  after six, it would be after five, 'cause I work till

25  five.

1    Q     All right.  I take it that since you didn't

2    get out of your vehicle the other day when you were out

3    there, you didn't speak to anyone at the shopping center,

4    correct?

5    A     No.

6    Q     Now, at any point up to the present date, have

7    you ever spoken with anyone at the shopping center

8    regarding the accessible paths of travel?

9    A     No.

10   Q     At any point up to the present date, have you

11   ever spoken with anyone at the shopping center regarding

12   thresholds or specifically the threshold at Radio Shack?

13   A     No.

14   Q     When you went into the Radio Shack in the past

15   with the assistance of your wife, did you address with

16   the employees of the Radio Shack there the threshold and

17   any issues regarding that?

18   A     No, sir.  I have found it does no good.

19   Q     And you're talking in other contexts?

20   A     Yes, sir.

21   Q     You're talking that in your experience and in

22   your words, communicating with the owners of property

23   does no good, because you've tried that with owners

24   and/or managers of other commercial properties, I take

25   it?

1      A      Yes.

2      Q      Okay.  Now, do you know the name of the shoe

3  store that your wife visits at the defendant shopping

4  center?

5      A      No.

6      Q      Other than the Radio Shack and perhaps the

7  Cingular store and perhaps that shoe store, do you recall

8  other stores at the defendant shopping center that you

9  have patronized in the past?

10     A      No.

11     Q      Is that because you just don't remember, or

12 are those the only ones that you have patronized?

13     A      That would be the only reason I would have

14 gone there, to be honest with you.

15     Q      So that I understand, the only reason you

16 would have gone there would have been to go to Radio

17 Shack or the Cingular Wireless store or to accompany your

18 wife to the shoe store?

19     A      Well, it's possible I would have gone to the

20 Chinese restaurant as well that's there.  I can't

21 remember the name of it exactly, but again the same

22 problem exists.

23     Q      I just need to clarify that.  Are you saying

24 it's possible that in the past you've been to the Chinese

25 restaurant?

1      A      No.

2      Q      What you're saying is that you have never been

3  there, correct?

4      A      No, I've never been there.  I said I would

5  have.  If I had had the ability, I probably would have

6  gone to it, since we were already there, but, no.

7      Q      For the record, the reason you didn't go to

8  the Chinese restaurant when you may otherwise have is

9  because there was some kind of a problem accessing it

10  from your perspective?

11      A      Yes, sir.

12      Q      And what was that problem?

13      A      The door, threshold as well.

14            MR. AURILIO:  Excuse me, are you saying the

15      door, or the threshold or both?

16            THE WITNESS:  The threshold.

17            MR. AURILIO:  The door was --

18            THE WITNESS:  Well, I never attempted the

19      door, but if I had been by myself, it would have

20      created the same problem as Radio Shack.  It's

21      impossible to hold the door and climb over the

22      threshold.  It just doesn't work.  You end up stuck

23      between the door and the frame.

24  BY MR. CARNEY:

25      Q      Do you know the name of the -- strike that.

1    Let me just clarify that.

2            Meaning, describe that more, particularly,

3    what do you mean you end up stuck?

4    A       Well, if you're holding a door and you try to

5    go over the threshold, it's possible to possibly get two

6    wheels over the threshold, but then you have to grab the

7    chair to force the other wheels over, and the minute you

8    do that, the door closes against you.  And you are

9    actually stuck between the door frame and the door

10   itself.  The rims on the tire will get stuck on that door

11   frame, and you can't move.  You have to back out, it's

12   the only thing you can do.  It's impossible to go

13   forward.

14   Q       Has that problem ever arisen for you at the

15   Radio Shack at the defendant shopping center, getting

16   stuck as you just described?

17   A       No, because my wife was with me the times I

18   went in.

19   Q       And again, what you're talking about, just

20   because we're on the record, it's easier to be

21   conversational, but the record needs to be clear.

22           You're describing experiences you've had in

23   the past in properties other than the defendant shopping

24   center?

25   A       Yes, places where there was a threshold

1    similar to that, where I had to do that by myself, that's

2    correct.

3        Q     Do you know the name of the gentleman who is

4    serving as the expert witness in this case?

5              MR. AURILIO:  Would you like him to look at a

6       copy of the report?  He's been provided it previously.

7    BY MR. CARNEY:

8        Q     Well, I just want to know if you know the

9    gentleman's name.

10       A     Well, not right out of my head, but I do know

11   of the gentleman, yes.

12       Q     Okay.  Have you spoken to him?

13       A     No.

14       Q     Do you know whether the gentlemen that's

15   serving as an expert in this particular case has ever

16   served as an expert in any other ADA Title III cases in

17   which you've been a named party?

18       A     Yes.

19       Q     Do you know how many?

20       A     No, sir.

21             MR. AURILIO:  For the record, Counselor, we

22      use several experts.  And we've used several experts

23      in conjunction with the lawsuits filed by Mr. Fox.

24             MR. CARNEY:  I understand.  And I'm not, you

25      know, I'm just trying to get a feel for what Mr. Fox

1    knows.

2            MR. AURILIO:   Okay.

3    BY MR. CARNEY:

4       Q       Have you been provided the gentleman's report

5    as it relates to the defendant corporation in this

6    litigation?

7       A       Yes, sir.

8       Q       Now, I'm just going to ask you a couple

9    questions about other cases in which you've been a party.

10   Do you know what it was, what calendar year it would have

11   been that you were first identified as a named plaintiff

12   in a Title III ADA case?

13      A       No, sir.

14      Q       Do you know, currently, how many lawsuits are

15   pending in any court --

16      A       Eighteen.

17      Q       -- in which -- let me just finish the question

18   so the record is clear -- in which you are a named

19   plaintiff in a Title III ADA case?

20      A       Eighteen.

21      Q       Do you know what courts those cases are filed

22   in?  Are they all in Federal District Court in West Palm

23   Beach?

24      A       The attorney would know the answer to that

25   better than me.

1    Q    But you knew it was eighteen.  Why did you

2  have that number so readily?

3    A    I keep explicit records of everything that's

4  done.

5    Q    Okay.  In your house?

6    A    Yes, sir.

7    Q    You have files on each case?

8    A    I have a file on every single case.

9    Q    I take it that this ends up taking up a lot of

10  your personal time?

11    A    To an extent.

12    Q    Your involvement in litigation of this nature?

13    A    Sure.

14    Q    You haven't given many depositions though, it

15  sounds like?

16    A    No, sir.

17    Q    What was the nature of the last deposition

18  you've given?

19    A    The last deposition involved a lawsuit brought

20  against the City of Riviera Beach which I was a city

21  councilman at the time, by the former city manager.

22    Q    So that wasn't a Title III case?

23    A    No, sir.

24    Q    Have you ever been asked to give a deposition

25  in a case of this nature?

Page 25

1    A      No, sir.

2    Q      I'm honored.

3    A      Okay.

4    Q      Have you had occasion to go to trial and give

5    testimony in any Title III cases?

6    A      No, sir.

7    Q      Now, do you try to, in the recordkeeping that

8    you perform, keep track of the time that you have into

9    each of these cases?

10   A      No.

11   Q      What about costs?  Do you get reimbursed for

12   costs on these cases?

13   A      No.

14   Q      No compensation?

15   A      No, in fact, this is costing me a lot of money

16   sitting here.

17   Q      Because you're not working?

18   A      That's right.

19   Q      What's the goal?  What's your objective in

20   this case?

21   A      My objective is to make it so that myself and

22   those people who don't complain, because they just walk

23   away, that have disabilities are able to make use of the

24   businesses and restaurants and things that are out there.

25   And if I can help myself and others, I'm very happy.

1    Q    Injunctive relief, getting an injunction from

2  the court to have the properties, to the extent that the

3  law requires, become compliant?

4    A    Absolutely.

5    Q    Now, after you received a copy of the expert

6  report in this particular case, did you go back out to

7  the property and inspect it, for lack of a better way of

8  asking?

9    A    No.

10    Q    Was there anything about the report that

11  was -- strike that question.

12        Now, sir, you've indicated that you've been to

13  the defendant shopping center a number of times.  And,

14  again, I'm going to ask you to estimate.  How many years

15  going back has it been -- and I know it's been periodic

16  and sort of scatter shot -- but has it been that you've

17  been going to that shopping center?

18    A    It would have to be when I was last working up

19  in Jupiter, and I have to place that, I don't know.

20        MR. AURILIO:  I'm going to go ahead and object

21    on the basis of relevance.  You can answer it if you

22    have an estimate, that's no problem.

23        THE WITNESS:  The estimate would have to be at

24    least seven or eight years, but I can't get it down.

25  BY MR. CARNEY:

Page 27

1    Q     Going back?

2    A     Yes.

3    Q     All right.  Meaning that give or take maybe

4  even a number of years, it's been at least seven or eight

5  years since the first time you and/or your wife was at

6  the defendant shopping center?

7    A     I won't say that.  I'm guessing at the years.

8  I can't give you seven years or anything else.  It could

9  be that far, but I won't block that in concrete, I can't.

10   Q     Yea, I'm not asking you to block it in

11 concrete.  It sounds like you're giving me, you're

12 bracketing to the best of your ability or estimate.

13   A     Well, yes, it's a pure estimate, that's all it

14 is.

15   Q     Okay.  All right.  At some point you -- strike

16 that.

17         At some point, did you make a decision to file

18 a suit against this particular defendant shopping center?

19         MR. AURILIO:  Objection, that's pretty

20    obvious, isn't it?  You can answer.

21   A     Well, yes.

22 BY MR. CARNEY:

23   Q     When?

24   A     I don't exactly know when.  At some point when

25 I decided I just was having too much trouble getting into

Page 28

1   the place, but I can't tell you exactly when.

2       Q       Was there a triggering event for you?

3       A       If I had to say a triggering event, it would

4   probably be because there was a time when I wanted to go

5   into that place myself and I couldn't do it.

6       Q       That place meaning?

7       A       Meaning Radio Shack.

8       Q       Okay.

9       A       And when I got there, I encountered the

10  parking end everything else that I've already discussed.

11      Q       That wasn't this most recent visit, obviously?

12      A       No, sir.

13      Q       So there was a time in the past before this

14  most recent visit that you went to the shopping center

15  alone, it sounds like?

16      A       Sure.

17      Q       You do recall that now?

18      A       Uh-huh.

19      Q       Yes?

20      A       Yes.

21      Q       And on that occasion, you got out of the car,

22  I take it?

23      A       Yes.

24      Q       And on that occasion you were in a wheelchair?

25      A       Yes, sir.

1    Q       And on that occasion you parked in the parking

2    lot?

3    A       Yes, sir.

4    Q       And on that occasion, presumably, you

5    travelled to the door of the Radio Shack via one of the

6    accessible paths of travel, correct?

7    A       Yes, sir.

8    Q       By yourself, correct?

9    A       Yes, sir.

10   Q       When you got to the Radio Shack that time, did

11   you speak with anyone?

12   A       No, sir.

13   Q       Did you attempt to go inside?

14   A       Yes, I did.

15   Q       And what happened?

16   A       As I said, I got as far as the doorstep, the

17   door sill, and I really couldn't go any further.  I

18   didn't want to chance it beyond that.  Once I tried to

19   get over that sill, as I told you, I was going to get

20   stuck in the doorway.

21   Q       Did you open the door?

22   A       Sure.

23   Q       Did you get stuck in the doorway?

24   A       No, when my front wheels hit the step, I

25   realized, having gone through that situation before, that

1    I wasn't going to be able to do it, and I just backed

2    out.

3        Q       Having gone through the situation before on

4    other properties?

5        A       Sure.

6        Q       You didn't communicate with anyone at Radio

7    Shack that day, correct?

8        A       No.

9        Q       Or anyone else from the shopping center,

10   correct?

11       A       No, sir.

12       Q       On that day, did you go to any of the other

13   stores in the defendant facility?

14       A       No, sir.

15       Q       Was that the point that you decided to file

16   this lawsuit?

17       A       It would have to be, yes.

18       Q       And how did you go about doing that?  What was

19   the first step that you took in moving forward on the

20   lawsuit?

21       A       The step would be to contact Mr. Aurilio and

22   tell him that I had a problem with this property, with

23   having seen the parking lot and the door, whatever you

24   call it, the doorsills --

25       Q       The threshold?

1    A    -- and the problem I had had.  And I discussed

2  it with Mr. Aurilio, and he said that they would look

3  into it.

4    Q    Okay.  Have you done any sort of public record

5  searches, either by computer or the old-fashioned way,

6  relative to the defendant shopping center?

7    A    No, sir.

8         MR. AURILIO:  Give me a little time.  I object

9  to form.  What do you mean?  I don't understand the

10 question.  Research on the defendant?  How?

11        MR. CARNEY:  Well, you understood the

12 question, didn't you?

13        MR. AURILIO:  Well, I need to understand the

14 question.  Is he doing research on a defendant

15 regarding what, the corporate structure?

16        MR. CARNEY:  Well, my question was very

17 general:  Whether he had done any, either computer or

18 by going to some kind of a governmental office, record

19 searches relative to the defendant property.  It's a

20 broad question and he answered it.  And his answer was

21 no.

22        MR. AURILIO:  Okay.  Then, whatever it was

23 broad or specific, the answer is no.

24        MR. CARNEY:  Yes, that's why I think it

25 obviates any issues as to the question.

Page 32

1          Those are all the questions I'm going to ask.

2     Thank you, sir.

3          THE WITNESS:  You're very welcome.  Thank you.

4          MR. AURILIO:  I've got a little cross to

5     clarify certain things.

6                    CROSS-EXAMINATION

7     BY MR. AURILIO:

8     Q     We were talking about dates, and you had

9     indicated that you initially visited with regards to this

10    lawsuit in 2004.  And I thought it was 2005.  And if I

11    may, with your permission, Counselor, I'm going to show

12    you the authorization that was signed and see if you want

13    to reassess, 'cause I think we're mistaken on the date.

14    It's probably not a big thing, but..

15    A     I'm bad on dates.  I'm real bad on dates.

16    Q     This is the authorization which was faxed to

17    us --

18         MR. AURILIO:  If you'd like.  I'll pull it out

19    and show it to you.

20         MR. CARNEY:  Candidly, I don't think it's a

21    big deal either, so you can just show it to him.

22         MR. AURILIO:  Okay.

23    BY MR. AURILIO:

24    Q     Without pulling it out, here's your signature,

25    here's where it was faxed back on June 30th, 2005, at

Page 33

1    9:10 p.m., I guess, that's from you?

2        A     Yes, that's mine.

3        Q     And so your visit would have been some time

4    prior to June 30th of 2005?

5        A     Correct.

6        Q     Would it have been as early as 2004, or would

7    it have been just prior to that?

8        A     It would probably be somewhere in the area of

9    the date that I signed that.

10       Q     So you may have been mistaken about it?

11       A     I certainly think that's very possible.

12       Q     Okay.  Now, you indicated that that shopping

13   center is approximately twenty-five miles from your

14   residence, I think, right?

15       A     Right, that was a rough guess, as we say.

16       Q     But from where you work now, it's fairly

17   close?

18       A     Yes, it's about six or seven miles.

19       Q     And that is more convenient than, say, other

20   alternatives, like how about the Gardens Mall or some of

21   the others?

22             MR. CARNEY:  Object to form.

23       A     Well, as I mentioned, the Gardens Mall is one

24   of the areas I mentioned where in order to go to the

25   Radio Shack in the Gardens Mall, parking is not an issue,

1    but Radio Shack is on the upper floor, all the way in the

2    middle of the mall.  It's a very large distance to

3    travel.  So in this place, if I can drive up there and

4    get out in a reasonable way, I'm right there at the door

5    almost.  Sixty feet is a whole let better than probably a

6    quarter of a mile or more.

7    BY MR. AURILIO:

8        Q     Is that a handy place to meet your wife after

9    she gets off work and/or, I mean, well, I guess -- strike

10   that.

11              Where does your wife work?

12       A     My wife works in Riviera Beach, on Garden

13   Road.

14       Q     And she comes up there to meet you sometimes?

15       A     Yes, she will, yes.

16       Q     And you said you went to the restaurant that

17   was up there, but it's now a different restaurant?

18       A     No, I don't know if it was a different

19   restaurant at the time.  It was a Chinese restaurant.  I

20   believe it was still there.  It was there at the time.  I

21   know it was there the other day when I went through

22   there.  But the access appears to be the same.  It's

23   almost impossible to get in there.

24       Q     Did you try to go there, or did you ever visit

25   that particular restaurant, or you just observed and

1    dismissed or...

2        A        Just observed and dismissed.

3        Q        How about the other stores in that place, do

4    they all have, from your observation, similar

5    difficulties with thresholds and getting in the door?

6        A        No, TJ Maxx doesn't.  I believe that there's

7    another store associated with TJ Maxx right next to it.

8    That may be the shoe store, I'm not sure.  But it also

9    has a very easy threshold.  There's no problem.

10            As far as all the others go, I don't know, I

11    don't really know.  From what I observed when I went

12    there last week, it appears they all have a threshold

13    problem.

14        Q        Okay.  Did you have occasion to observe the

15    threshold problem, just in your general observation, when

16    you initially went there back in, somewhere in the spring

17    of 2005?

18        A        Yes, sir.

19        Q        Well, if the threshold problem were not there,

20    is it possible you might patronize other establishments,

21    other tenants at this shopping center?

22        A        I would say if it was going to Radio Shack in

23    the evening, it's likely I would go to the Chinese

24    restaurant for sure.

25        Q        And perhaps others?

1    A    And perhaps others.  I'm sure my wife wouldn't

2   have any problems with the shoe store that's there.

3    Q    Let me ask you about getting stuck in the

4   door.  You open the door, you try to get in, you don't

5   have three hands, so therefore, you can't move the large

6   wheels of the chair over the threshold and hold the door

7   open?

8    A    Exactly.

9         MR. CARNEY:  Object to the form.

10        MR. AURILIO:  Okay.  Let me know what your

11   objection is, and I will address it.

12        MR. CARNEY:  Sure.  I don't know if you were

13   referring to an incident at the Radio Shack on this

14   property, or some hypothetical place.

15        MR. AURILIO:  It's a hypothetical.  Can we

16   withdraw the objection in that case?

17        MS. MITCHELL:  Yes, if that's the

18   clarification, I don't have a problem with the

19   question.

20   BY MR. AURILIO:

21    Q    Have you had occasion, not at this particular,

22   but just in general, have you had occasion where that has

23   happened to you?  You tried to get in and the door closed

24   on you and so on?

25    A    Yes, sir.

1    Q    Is that embarrassing?

2    A    Yes, it's embarrassing, it's very awkward.   In

3  some cases I've actually had people run up to help me get

4  out, because, in fact, I can't get to the other wheel

5  once the door closes because it's got my, my hand is

6  sometimes jammed right against the chair, against the

7  rim.

8    Q    So to go through that exercise by your

9  yourself at Radio Shack or any place else up there that's

10  got this threshold problem, is going to maybe expose you

11  to unnecessary embarrassment?

12    A    Absolutely.  I won't do it for that reason.

13  It's very awkward.  I don't like having to depend on

14  other people to help me get around.

15    Q    Do you know other people who are in

16  wheelchairs?

17    A    I don't really have too many, much contact

18  with them anymore.  I used to a lot, but not anymore.

19    Q    In your observations, when people in

20  wheelchairs encounter these kinds of potentially

21  embarrassing situations, what do they do?

22         MR. CARNEY:  Object to the form.

23         MR. AURILIO:  You can answer.

24    A    They will go the other way.  They won't even

25  try it.

1   BY MR. AURILIO:

2        Q       Okay.  You would go to the other stores, you

3   might go to the other stores if they were accessible, I

4   think we established that, correct?

5               MR. CARNEY:  Form.

6        A       Yes, sir.

7   BY MR. AURILIO:

8        Q       The other thing is:  At this point, being as

9   Radio Shack apparently is going to stay there, and if we

10  can presume that, and your wife still likes the shoes up

11  there, would you in the future visit this shopping center

12  if it was more accessible?

13       A       Absolutely.

14              MR. AURILIO:  That's it.

15              MR. CARNEY:  Nothing from me.

16         Sir, you have the right, if you want to, to read

17     this to see whether it's been transcribed correctly

18     and whether it accurately reflects your testimony, or

19     you can waive that right and forego the reading.

20              MR. AURILIO:  We'll read.

21              MR. CARNEY:  I'll order it.

22              MR. AURILIO:  We'll take a copy.

23              (Witness excused.)

24              (Deposition concluded.)

25

```
 1   THE STATE OF FLORIDA )

 2   COUNTY OF PALM BEACH )

 3

 4           I, Raquel Robinson, Court Reporter, hereby

 5   certify that I was authorized to and did

 6   stenographically report the deposition of ALLEN Fox,

 7   that a review of the transcript was requested; and

 8   that pages 1 through 38, inclusive, are a true record

 9   of my stenographic notes.

10

11           I further certify that I am not a relative or

12   employee or attorney or counsel of any of the parties,

13   nor am I a relative or employee of any of the parties'

14   attorney or counsel connected with the action, nor am

15   I financially interested in the action.

16

17           Dated this   20th   day of   March   ,

18   2006.

19

20

21

22

23           Raquel Robinson, RPR

24

25
```

40

```
1   THE STATE OF FLORIDA )

2   COUNTY OF PALM BEACH )

3

4           I, the undersigned authority, certify that

5   ALLEN Fox personally appeared before me and was duly

6   sworn.

7

8           WITNESS my hand and official seal this

9   _____ 20th day of _March_, 2006.

10

11

12           Raquel Robinson

13           Raquel Robinson, RPR

14           Notary Public - State of Florida

15

16                   Raquel Robinson
                      Commission # DD146255
17                    Expires Oct. 4, 2006
                      Bonded Thru
                      Atlantic Bonding Co., Inc.

18

19

20

21

22

23

24

25
```

Page 41

1                    E R R A T A   S H E E T

2       In Re:  Allen Fox vs Morris Jupiter Associates, LTD

3       DO NOT WRITE ON TRANSCRIPT -- ENTER CHANGES HERE:

4       Page No.    Line No.              Change         Reason

5       -----------/-------------/------------------/--------

6       -----------/-------------/------------------/--------

7       -----------/-------------/------------------/--------

8       -----------/-------------/------------------/--------

9       -----------/-------------/------------------/--------

10      -----------/-------------/------------------/--------

11      -----------/-------------/------------------/--------

12      -----------/-------------/------------------/--------

13      -----------/-------------/------------------/--------

14      -----------/-------------/------------------/--------

15      -----------/-------------/------------------/--------

16      -----------/-------------/------------------/--------

17      -----------/-------------/------------------/--------

18      -----------/-------------/------------------/--------

19      -----------/-------------/------------------/--------

20      -----------/-------------/------------------/--------

21              Under penalties of perjury, I declare that I
        have read my deposition and that it is true and
22      correct subject to any changes in form or substance
        entered above.
23

24      _____        _____
        Date                          ALLEN FOX

25

**A**

ability 15:4 20:5
    27:12
able 6:9 7:21,22
    8:1 10:3,9
    25:23 30:1
above-entitled
    3:2,8
above-named
    3:9
Absolutely 26:4
    37:12 38:13
access 7:14 10:2
    10:6,9,16,17
    12:12 14:5
    16:24 34:22
accessible 8:2,3
    14:2,10 15:12
    16:23 18:8
    29:6 38:3,12
accessing 14:24
    20:9
accident 4:22
accompany
    19:17
accurately 38:18
action 3:9 39:14
    39:15
actual 15:9
ADA 22:16
    23:12,19
address 4:8 5:20
    18:15 36:11
advance 5:14
ago 4:12
agreed 42:7
ahead 26:20
allegations
    16:15
Allen 1:6,15 2:4
    3:1 4:2,9 39:6
    40:5 41:2,24
    42:5
alternatives
    33:20
amateur 16:15
amount 13:6
and/or 18:24

27:5 34:9
answer 13:11
    23:24 26:21
    27:20 31:20,23
    37:23
answered 31:20
anybody 14:7
anymore 37:18
    37:18
Apache 4:9
apologize 13:18
apparently 38:9
appear 16:25
appearances
    3:10
appeared 40:5
APPEARING
    3:13,20
appears 34:22
    35:12
approximate 7:5
approximately
    7:3 10:21
    33:13
area 11:14 12:3
    12:5 14:10
    33:8
areas 33:24
arisen 21:14
arms 9:18
arranged 7:24
asked 13:7
    24:24
asking 4:18 5:3
    16:12 26:8
    27:10
assistance 18:15
associated 35:7
Associates 1:10
    3:5,15 41:2
    42:1,5
attempt 9:1 10:2
    15:16 17:4
    29:13
attempted 6:6
    6:12 7:14 13:9
    13:20 20:18
attention 42:17

attorney 23:24
    39:12,14
Aurilio 2:7 3:4
    3:14,15 13:11
    20:14,17 22:5
    22:21 23:2
    26:20 27:19
    30:21 31:2,8
    31:13,22 32:4
    32:7,18,22,23
    34:7 36:10,15
    36:20 37:23
    38:1,7,14,20
    38:22 42:1,1,6
authority 40:4
authorization
    32:12,16
authorized 39:5
aware 16:5
    42:11
awkward 37:2
    37:13
A-l-l-e-n 4:9
A.M 1:25,25

**B**

back 4:13 11:15
    14:12 21:11
    26:6,15 27:1
    32:25 35:16
backed 30:1
bad 32:15,15
Bar 1:5
barrier 15:10
basically 9:14
    10:3,8 12:4
basis 26:21
BASS 42:20
batteries 12:7
battery 11:12
Beach 3:6,6,17
    4:10 12:18
    14:17,18 23:23
    24:20 34:12
    39:2 40:2 42:3
behalf 3:8,13,20
    16:16
believe 34:20

35:6
benefit 4:15
best 27:12
better 23:25
    26:7 34:5
beyond 29:18
big 32:14,21
bit 12:10
Bldg 3:16 42:2
block 7:25 17:7
    27:9,10
blocked 10:8
Boulevard 3:22
    4:10
bracketing
    27:12
break 5:12
broad 31:20,23
brought 5:18
    24:19
Broward 3:22
businesses 25:24

**C**

C 13:2
calendar 23:10
call 30:24
called 13:1
Candidly 32:20
car 11:13 14:21
    28:21
Carney 2:6 3:21
    4:6 13:12
    20:24 22:7,24
    23:3 26:25
    27:22 31:11,16
    31:24 32:20
    33:22 36:9,12
    37:22 38:5,15
    38:21 42:24
case 1:4 11:5
    16:4,9,14 22:4
    22:15 23:12,19
    24:7,8,22,25
    25:20 26:6
    36:16
cases 22:16 23:9
    23:21 25:5,9

25:12 37:3
cause 3:2 6:11
    17:24 32:13
cc 42:24
center 5:19,20
    5:22 9:6 10:1
    10:23 11:7,21
    11:24 13:10
    14:3 15:21
    16:5 18:3,7,11
    19:4,8 21:15
    21:24 26:13,17
    27:6,18 28:14
    30:9 31:6
    33:13 35:21
    38:11
certain 32:5
certainly 13:19
    33:11
certainty 10:22
certified 4:4
certify 39:5,11
    40:4
chair 15:15 21:7
    36:6 37:6
chance 29:18
Change 41:4
changed 14:8
changes 41:3,22
    42:9,10,11
Chinese 19:20
    19:24 20:8
    34:19 35:23
Cingular 10:14
    10:18,19 19:7
    19:17
city 3:5 24:20,20
    24:21
claim 4:23 5:18
clarification
    36:18
clarify 5:3 11:2
    19:23 21:1
    32:5
clarity 5:10
clear 4:17 5:1
    21:21 23:18
client 5:19

climb 20:21
close 12:5 33:17
closed 36:23
closes 21:8 37:5
come 12:13
comes 34:14
commercial
    18:24
communicate
    30:6
communicating
    18:22
communication
    5:5
company 13:1
compensation
    25:14
complain 25:22
complaint 16:16
completely 9:15
compliant 26:3
computer 31:5
    31:17
concluded 38:24
concrete 27:9,11
conjunction
    22:23
connected 39:14
contact 30:21
    37:17
contexts 18:19
contractors 13:3
convenience
    42:8
convenient
    11:15 14:11
    33:19
conversational
    21:21
copy 22:6 26:5
    38:22 42:8,12
corporate 31:15
corporation
    23:5
correct 5:23
    7:15,16 8:3 9:3
    9:4 13:21
    15:21 16:6

18:4 20:3 22:2
    29:6,8 30:7,10
    33:5 38:4
    41:22
correctly 38:17
costing 25:15
costs 25:11,12
councilman
    24:21
counsel 2:13
    39:12,14 42:7
    42:11,13,15
Counselor 22:21
    32:11
County 3:6 39:2
    40:2
couple 23:8
court 1:2 3:3,9
    23:15,22 26:2
    39:4
courts 23:21
created 20:20
cross 2:2 32:4
CROSS-EXA...
    32:6
crutches 9:14
curbs 8:4
current 4:8
currently 7:10
    23:14
Cynthia 3:15

_____
          **D**
_____
**D** 2:1
**Data** 13:1,3,5
**date** 1:24 18:6
    18:10 32:13
    33:9 41:24
**Dated** 39:17
**dates** 32:8,15,15
**day** 3:7 13:14,15
    13:21 15:7
    17:6,12,12,15
    18:2 30:7,12
    34:21 39:17
    40:9
**days** 42:16
**deal** 32:21

**Dear** 42:6
**decided** 27:25
    30:15
**decision** 27:17
**declare** 41:21
**defendant** 1:12
    1:18 3:8,20 7:9
    8:10,13 9:5
    10:1,23 11:7
    13:10 14:2
    15:20 19:3,8
    21:15,23 23:5
    26:13 27:6,18
    30:13 31:6,10
    31:14,19
**depend** 37:13
**deposition** 1:15
    3:1 4:11,16 5:8
    24:17,19,24
    38:24 39:6
    41:21 42:8,9
**depositions**
    24:14
**describe** 21:2
**described** 21:16
**describing** 21:22
**different** 7:9
    34:17,18
**difficult** 9:18
    14:13
**difficulties** 35:5
**direct** 2:2 4:5
    13:3
**directly** 42:12
    42:15
**disabilities** 9:12
    25:23
**discussed** 28:10
    31:1
**dismissed** 35:1,2
**distance** 9:19
    10:11 14:20
    34:2
**distant** 7:1
**District** 1:2,3
    23:22
**document** 42:12
**documents**

42:15
doing 9:21 30:18
    31:14
door 7:21 14:23
    15:14 20:13,15
    20:17,19,21,23
    21:4,8,9,9,10
    29:5,17,21
    30:23 34:4
    35:5 36:4,4,6
    36:23 37:5
doorsills 30:24
doorstep 29:16
doorway 29:20
    29:23
draftsman 12:22
    12:23
Draper 3:22
drive 9:10 16:3
    34:3
drove 15:19
    16:19
duly 4:3 40:5

_____
          **E**
_____
**E** 2:1 41:1,1,1
**earlier** 13:17
**early** 33:6
**easier** 11:18
    14:14 21:20
**East** 3:22
**easy** 35:9
**egress** 14:15
    17:5
**eight** 26:24 27:4
**eighteen** 23:16
    23:20 24:1
**either** 31:5,17
    32:21
**embarrassing**
    37:1,2,21
**embarrassment**
    37:11
**employee** 39:12
    39:13
**employees** 18:16
**enclosed** 42:8
**encounter** 37:20

encountered
    28:9
ends 24:9
endurance 5:15
ENTER 41:3
entered 41:22
entering 42:9
entire 8:20
Errata 2:14 42:8
    42:11
Esq 3:14,15,21
    41:22
established 38:4
establishments
    35:20
estimate 26:14
    26:22,23 27:12
    27:13
evening 35:23
event 28:2,3
exactly 7:12
    19:21 27:24
    28:1 36:8
EXAMINATI...
    4:5
Excuse 20:14
excused 38:23
execute 42:16
executed 42:12
exercise 37:8
exists 10:15 12:3
    19:22
expect 5:17
experience
    18:21
experiences
    21:22
expert 16:13,13
    22:4,15,16
    26:5
experts 22:22,22
explicit 24:3
expose 37:10
extent 24:11
    26:2

_____
          **F**
_____
**facilitates** 42:14

**facility** 11:7
 30:13
**fact** 6:4 9:16
 12:4,9 14:17
 25:15 37:4
**fair** 15:11
**fairly** 10:7,11
 12:5 16:25
 17:2 33:16
**familiar** 8:12,21
 8:22 13:23
 14:1
**family** 11:11,17
 12:13
**far** 10:22 27:9
 29:16 35:10
**faxed** 32:16,25
**Federal** 23:22
**feel** 22:25
**feet** 14:22 34:5
**fight** 11:16
**figured** 14:8
**file** 24:8 27:17
 30:15
**filed** 22:23 23:21
**files** 24:7
**financially**
 39:15
**find** 10:6 42:8
 42:14
**finish** 23:17
**first** 4:3,16 8:9
 23:11 27:5
 30:19
**five** 9:16 17:24
 17:25
**Fl** 3:17,23 42:3
**flippant** 11:9
**floor** 14:19 34:1
**Florida** 1:3,5 3:4
 3:7 4:10 12:17
 13:4 39:1 40:1
 40:14
**follow** 6:11
**following** 4:15
**follows** 3:11 4:4
**force** 21:7
**forego** 38:19

**form** 31:9 33:22
 36:9 37:22
 38:5 41:22
**former** 24:21
**forward** 21:13
 30:19 42:12
**forwarded** 2:14
**found** 18:18
**Fox** 1:6,15 2:4
 3:1 4:2,9 22:23
 22:25 39:6
 40:5 41:2,24
 42:5
**FP** 12:24,25
 13:4
**frame** 20:23
 21:9,11
**Friday** 17:16
**front** 14:23
 29:24
**Ft** 3:23
**full** 10:8
**function** 11:18
 12:14
**further** 7:1 11:3
 29:17 39:11
**future** 38:11

———— **G** ————
**Gail** 8:6
**Garden** 34:12
**Gardens** 33:20
 33:23,25
**general** 31:17
 35:15 36:22
**generally** 14:1
 16:14
**gentleman** 22:3
 22:11
**gentleman's**
 22:9 23:4
**gentlemen** 22:14
**getting** 4:21
 15:10 21:15
 26:1 27:25
 35:5 36:3
**give** 4:7 5:14
 15:18 24:24

 25:4 27:3,8
 31:8
**given** 4:11 24:14
 24:18
**giving** 27:11
**go** 4:14 6:6,9 9:1
 9:5 10:5,13
 11:4,5,5,6,6,8
 11:15 12:6,10
 13:9,20 14:9
 14:11,21 15:1
 15:4 17:4,7
 19:16 20:7
 21:5,12 25:4
 26:6,20 28:4
 29:13,17 30:12
 30:18 33:24
 34:24 35:10,23
 37:8,24 38:2,3
**goal** 25:19
**going** 5:2 7:5
 10:5 12:3 23:8
 26:14,15,17,20
 27:1 29:19
 30:1 31:18
 32:1,11 35:22
 37:10 38:9
**good** 4:7 5:14
 9:25 18:18,23
**governmental**
 31:18
**grab** 21:6
**guess** 7:6 33:1
 33:15 34:9
**guessing** 27:7
**G-a-i-l** 8:6

———— **H** ————
**H** 41:1
**half** 7:25
**hand** 5:13 37:5
 40:8
**handicap** 10:8
 14:21,22
**handling** 42:14
**hands** 36:5
 42:15
**handy** 34:8

**happen** 12:10
**happened** 29:15
 36:23
**happy** 25:25
**head** 22:10
**hear** 7:4
**help** 7:19 25:25
 37:3,14
**hereinafter** 4:4
**herewith** 42:8
**high** 15:14,17
**Highway** 3:5,16
 42:2
**hit** 29:24
**hold** 7:21 15:14
 16:12 20:21
 36:6
**holding** 21:4
**home** 12:13
 14:13,16
**honest** 17:1
 19:14
**honored** 25:2
**Hood** 11:11,11
**house** 24:5
**hypothetical**
 36:14,15

———— **I** ————
**identified** 23:11
**III** 22:16 23:12
 23:19 24:22
 25:5
**impolite** 5:9
**impossible**
 20:21 21:12
 34:23
**incident** 36:13
**inclusive** 39:8
**Indiantown**
 5:21 11:24
 15:20
**indicate** 42:10
**indicated** 7:13
 8:17 12:12
 26:12 32:9
 33:12
**information**

 4:23
**initially** 32:9
 35:16
**injunction** 26:1
**Injunctive** 26:1
**injured** 9:17
**inside** 6:18
 11:16 29:13
**inspect** 26:7
**interested** 39:15
**involved** 10:7
 16:13 24:19
 42:13
**involvement**
 24:12
**involving** 16:5
**issue** 33:25
**issues** 9:2 18:17
 31:25
**items** 12:7

———— **J** ————
**J** 3:21
**jammed** 37:6
**June** 32:25 33:4
**Juno** 12:17
**Jupiter** 1:10
 5:19 12:5
 26:19 41:2
 42:5

———— **K** ————
**keep** 24:3 25:8
**kind** 20:9 31:18
**kinds** 37:20
**knew** 11:19
 15:19 24:1
**know** 5:20,25
 7:6 13:8 15:22
 15:25 16:11,13
 17:21 19:2
 20:25 22:3,8,8
 22:10,14,19,25
 23:10,14,21,24
 26:15,19 27:24
 34:18,21 35:10
 35:11 36:10,12
 37:15
**knows** 23:1

Kubicki 3:22

**L**

L 12:24,25 13:4
lack 26:7
laid 14:2
large 3:4 7:20
  14:20 16:25
  34:2 36:5
Lauderdale 3:23
law 26:3
lawsuit 24:19
  30:16,20 32:10
lawsuits 22:23
  23:14
layout 8:12,16
letter 2:13 13:2
Light 12:17 13:4
likes 38:10
Line 41:4
litigant 16:4
litigation 13:19
  13:20 23:6
  24:12
little 11:3 31:8
  32:4
lives 11:11
location 7:9
long 5:17 7:11
  12:23 15:1
longer 13:5
look 16:1,14,17
  22:5 31:2
looked 16:20
lost 9:17
lot 7:24 9:17
  10:6,7 15:5
  16:3,19,23
  17:8 24:9
  25:15 29:2
  30:23 37:18
luck 9:25

**M**

M 42:24
mall 11:16 14:17
  14:18,19,25
  33:20,23,25
  34:2

manager 24:21
managers 18:24
maneuver 7:21
manipulate
  15:15
March 1:24 2:3
  3:7 42:4
mathematic
  10:22
matter 6:4 42:13
matters 42:15
Maxx 17:2 35:6
  35:7
mean 11:9 16:8
  21:3 31:9 34:9
meaning 4:20
  8:15 21:2 27:3
  28:6,7
means 14:14
meet 12:8 34:8
  34:14
mentioned
  33:23,24
met 11:10
methods 5:6
MICHAEL 3:21
middle 14:19
  34:2
mile 34:6
miles 10:25
  33:13,18
mine 33:2
mini 9:23
minor 9:13
minute 21:7
missed 13:17
mistaken 32:13
  33:10
Mitchell 3:15
  36:17
Monday 17:16
  17:17
money 25:15
morning 4:7
Morris 1:10
  41:2 42:5
move 9:19 21:11
  36:5

moving 30:19

**N**

N 2:1
name 4:8,9 8:5,6
  19:2,21 20:25
  22:3,9
named 16:8,11
  22:17 23:11,18
nature 24:12,17
  24:25
near 14:16
necessary 42:15
need 5:12 19:23
  31:13
needed 11:12
needs 21:21
negotiate 15:11
neither 5:14
never 15:9 20:2
  20:4,18
nonverbal 5:5
North 3:6,17
  42:3
Notary 3:3
  40:14
note 9:2
noted 42:10
notes 39:9
noticed 10:10
number 7:23,24
  8:2,25 24:2
  26:13 27:4
numbered 3:2
numbness 9:24

**O**

object 26:20
  31:8 33:22
  36:9 37:22
objection 27:19
  36:11,16
objective 25:19
  25:21
observation
  35:4,15
observations
  37:19
observe 35:14

observed 34:25
  35:2,11
obviates 31:25
obvious 15:18
  27:20
obviously 28:11
occasion 5:8
  12:11 25:4
  28:21,24 29:1
  29:4 35:14
  36:21,22
office 31:18
official 40:8
okay 4:13,18,21
  4:25 5:4,11,16
  5:25 6:13 7:5
  9:21 15:6 16:1
  19:2 22:12
  23:2 24:5 25:3
  27:15 28:8
  31:4,22 32:22
  33:12 35:14
  36:10 38:2
old-fashioned
  31:5
once 5:6 6:20
  29:18 37:5
ones 10:9 17:3
  19:12
open 29:21 36:4
  36:7
opportunity
  4:23
order 7:20 33:24
  38:21
outside 13:23
owners 18:22,23

**P**

Page 2:13,14
  41:4
pages 39:8
Palm 3:6,6,17
  4:10 14:17,18
  23:22 39:2
  40:2 42:3
paper 5:8
park 14:21 17:7

parked 29:1
parking 7:24 9:2
  10:6,7 15:5
  16:3,19,23
  17:8 28:10
  29:1 30:23
  33:25
particular 11:8
  22:15 26:6
  27:18 34:25
  36:21
particularly
  21:2
parties 39:12,13
party 22:17 23:9
passive 9:2
path 8:2
paths 8:4 14:2
  15:12 18:8
  29:6
patronize 12:1,4
  35:20
patronized
  11:25 12:2
  19:9,12
penalties 41:21
pending 3:9
  23:15
people 25:22
  37:3,14,15,19
perform 25:8
period 7:12
periodic 26:15
perjury 41:21
permission
  32:11
personal 24:10
personally 40:5
perspective
  20:10
place 3:10 10:13
  11:13 26:19
  28:1,5,6 34:3,8
  35:3 36:14
  37:9
placement 42:13
places 21:25
plaintiff 1:7,16

3:1,13 16:8,11
    23:11,19
please 4:8 5:1
    42:10,12,16
plus 10:25
point 18:6,10
    27:15,17,24
    30:15 38:8
polio 9:13
posed 15:9
position 12:21
possible 15:15
    19:19,24 21:5
    33:11 35:20
possibly 21:5
potentially
    37:20
Power 12:17
    13:4
precludes 14:25
premises 8:10
    8:13,15,16
present 18:6,10
    15:19 29:4
presumably
    15:19 29:4
presume 38:10
pretty 15:18
    27:19
previously 11:20
    22:6
prior 8:25 33:4
    33:7
probably 10:24
    20:5 28:4
    32:14 33:8
    34:5
problem 10:15
    14:24 15:3,10
    15:18 17:2
    19:22 20:9,12
    20:20 21:14
    26:22 30:22
    31:1 35:9,13
    35:15,19 36:18
    37:10
problems 36:2
procedure 4:13
    42:14

prompt 42:17
properties 18:24
    21:23 26:2
    30:4
property 8:19
    8:20,21 14:5
    16:2,15 18:22
    26:7 30:22
    31:19 36:14
provided 22:6
    23:4
public 3:4 31:4
    40:14
pull 32:18
pulling 32:24
pure 27:13
purpose 6:5
    11:2
puts 42:15
P.A 3:15 42:1
p.m 33:1

            Q
QC 13:1,3,5
quarter 34:6
question 4:17
    13:8 23:17
    26:11 31:10,12
    31:14,16,20,25
    36:19
questions 4:20
    23:9 32:1
quite 12:10
    15:14 17:1
quiz 5:15

            R
R 41:1,1
Radio 6:6,7,9,14
    6:18,23 7:9,14
    7:18 8:18 9:1
    10:2 11:13,19
    12:6,7,12 13:9
    13:20,24 14:12
    14:18,24 18:12
    18:14,16 19:6
    19:16 20:20
    21:15 28:7
    29:5,10 30:6

33:25 34:1
    35:22 36:13
    37:9 38:9
raise 5:13
ramp 10:16
ramps 16:22
Raquel 3:3 39:4
    39:23 40:13
    42:23
read 38:16,20
    41:21 42:8
readily 10:17
    24:2
reading 38:19
real 32:15
realized 29:25
really 14:13
    29:17 35:11
    37:17
rear 42:13
reason 6:11
    19:13,15 20:7
    37:12 41:4
reasonable 34:4
reassess 32:13
recall 4:13 6:22
    19:7 28:17
received 26:5
reconstruct
    17:12
record 4:7 5:10
    9:12 20:7
    21:20,21 22:21
    23:18 31:4,18
    39:8
recordkeeping
    25:7
records 24:3
RECROSS 2:2
REDIRECT 2:2
referring 8:18
    10:18 36:13
reflects 38:18
regarding 18:8
    18:11,17 31:15
regards 32:9
reimbursed
    25:11

relates 23:5
relative 9:21
    31:6,19 39:11
    39:13
relevance 26:21
relief 26:1
remember 19:11
    19:21
remote 11:12
rephrase 10:4
report 22:6 23:4
    26:6,10 39:6
Reporter 3:3
    39:4
REPORTING
    42:20
requested 39:7
requires 26:3
research 31:10
    31:14
reside 8:7
residence 10:23
    33:14
residing 9:15
restaurant 12:9
    19:20,25 20:8
    34:16,17,19,19
    34:25 35:24
restaurants
    25:24
retail 10:19
review 39:7
ride 17:7
right 4:14,22 6:3
    7:4,8 8:9,12,22
    10:14,16 11:23
    13:7 15:2 18:1
    22:10 25:18
    27:3,15 33:14
    33:15 34:4
    35:7 37:6
    38:16,19
rim 37:7
rims 21:10
Riviera 24:20
    34:12
Road 5:21 11:11
    11:12,24 15:20

34:13
Robinson 3:3
    39:4,23 40:13
    42:23
rough 33:15
route 14:10
RPR 39:23
    40:13 42:23
RR 42:25
rules 4:15
run 8:4 37:3

            S
S 41:1
Samuel 3:14
    42:1
Saturday 17:17
    17:19
saw 16:22,23
saying 19:23
    20:2,14
scatter 26:16
seal 40:8
searches 31:5,19
second 14:18
see 14:9 15:13
    15:24 16:1,21
    32:12 38:17
seen 30:23
sells 11:13
served 22:16
SERVICE 42:20
serving 22:4,15
set 7:10
seven 26:24 27:4
    27:8 33:18
Shack 6:6,7,9,14
    6:18,23 7:9,14
    7:18 8:18 9:1
    10:2 11:13,19
    12:6,7,12 13:9
    13:21,24 14:12
    14:18,24 18:12
    18:14,16 19:6
    19:17 20:20
    21:15 28:7
    29:5,10 30:7
    33:25 34:1

35:22 36:13
37:9 38:9
**Sheet** 42:9,11
**SHEET(S)(to**
2:14
**shoe** 12:1,2 19:2
19:7,18 35:8
36:2
**shoes** 38:10
**shop** 11:8
**shopped** 11:20
**shopping** 5:19
5:20,22 9:6
10:1,23 11:4,7
11:20,23 13:10
14:3 15:21
16:5 18:3,7,11
19:3,8 21:15
21:23 26:13,17
27:6,18 28:14
30:9 31:6
33:12 35:21
38:11
**shops** 11:5
**shot** 26:16
**shoulder** 9:17
**show** 32:11,19
32:21
**side** 9:24
**sidewalk** 8:1
10:6,9,12 15:5
17:5,8
**sign** 42:8
**signature** 2:13
32:24 42:15
**signed** 32:12
33:9
**sill** 29:17,19
**similar** 22:1
35:4
**simple** 4:15 17:2
**Sincerely** 42:19
**single** 24:8
**sir** 4:7 5:18 6:24
8:8 9:11 10:20
11:22 12:20
13:22,25 14:4
16:7,10,18

18:18,20 20:11
22:20 23:7,13
24:6,16,23
25:1,6 26:12
28:12,25 29:3
29:7,9,12
30:11,14 31:7
32:2 35:18
36:25 38:6,16
**sitting** 25:16
**situation** 29:25
30:3
**situations** 37:21
**six** 9:16 17:23,24
33:18
**sixty** 14:22 34:5
**sort** 10:19 11:17
26:16 31:4
**sounds** 9:3
24:15 27:11
28:15
**SOUTHERN**
1:3
**spatial** 11:12
**speak** 9:19
16:22 18:3
29:11
**specialty** 12:7
**specific** 31:23
**specifically**
18:12
**spoken** 14:7
18:7,11 22:12
**spots** 10:8 14:21
14:22
**spring** 35:16
**State** 3:4,6 39:1
40:1,14
**STATES** 1:2
**status** 16:1
**stay** 38:9
**stenographic**
39:9
**stenographica...**
39:6
**step** 29:24 30:19
30:21
**stop** 4:21 5:3

**store** 10:19 12:2
12:2,13 13:9
19:3,7,7,17,18
35:7,8 36:2
**stores** 11:23
16:24 19:8
30:13 35:3
38:2,3
**strength** 9:17
**strike** 20:25
26:11 27:15
34:9
**stroke** 9:13,21
9:23
**structure** 31:15
**stuck** 20:22 21:3
21:9,10,16
29:20,23 36:3
**subject** 41:22
**substance** 41:22
**substantial**
10:11
**suit** 13:18 27:18
**Suite** 3:23
**Summit** 3:16
42:2
**sure** 4:21 10:21
15:25 16:20
24:13 28:16
29:22 30:5
35:8,24 36:1
36:12
**survey** 16:15
**sustained** 9:22
**sworn** 4:3 40:6

─────── **T** ───────
**T** 41:1,1
**take** 5:12,17
18:1,24 24:9
27:3 28:22
38:22
**taken** 1:17 3:2
9:2
**talking** 18:19,21
21:19 32:8
**technical** 12:25
**tell** 4:3 5:12 6:17

15:17 17:14,15
28:1 30:22
**tenants** 35:21
**test** 5:15
**testified** 4:4
**testimony** 25:5
38:18
**Thank** 32:2,3
42:17
**thing** 21:12
32:14 38:8
**things** 11:16
25:24 32:5
**think** 7:11 13:7
15:11 31:24
32:13,20 33:11
33:14 38:4
**thought** 32:10
**three** 36:5
**threshold** 7:20
7:22 10:15
13:23 15:3,4,9
15:13,17,22
16:25 18:12,16
20:13,15,16,22
21:5,6,25
30:25 35:9,12
35:15,19 36:6
37:10
**thresholds** 18:12
35:5
**till** 17:24
**time** 1:25 3:10
7:12,18 8:9
13:6,19 17:18
17:21 24:10,21
25:8 27:5 28:4
28:13 29:10
31:8 33:3
34:19,20
**times** 5:24,25
6:16 8:23,25
21:17 26:13
**tire** 21:10
**Title** 22:16
23:12,19 24:22
25:5
**TJ** 17:2 35:6,7

**Today** 17:11
**told** 29:19
**Tower** 3:23
**track** 25:8
**transcribed**
38:17
**transcript** 39:7
41:3 42:13
**travel** 7:25 8:2
9:2 10:11
11:15 14:2,12
14:20 15:12
18:8 29:6 34:3
**travelled** 29:5
**trial** 25:4
**trick** 4:22
**tried** 18:23
29:18 36:23
**triggering** 28:2
28:3
**trouble** 10:5
27:25
**true** 39:8 41:21
**truth** 4:3
**try** 14:5 21:4
25:7 34:24
36:4 37:25
**trying** 10:6
22:25
**twenty-five**
10:24 33:13
**two** 7:24 12:24
21:5

─────── **U** ───────
**uh-huh** 4:19 5:7
28:18
**undersigned**
40:4
**understand** 5:2
5:2 19:15
22:24 31:9,13
**understood** 5:7
31:11
**UNITED** 1:2
**units** 10:2
**unnecessary**
37:11

**upper** 34:1
**use** 5:5 22:22
  25:23 42:9
**usually** 12:8
**US-1** 15:20
**U.S** 3:5,16 42:2

**V**
**variety** 16:23
**vehicle** 9:10
  15:7 18:2
**victim** 9:13
**violated** 5:6
**visit** 28:11,14
  33:3 34:24
  38:11
**visited** 5:22 8:10
  32:9
**visits** 19:3
**vis-a-vis** 16:15
**vs** 1:8 41:2 42:5

**W**
**Wachovia** 3:23
**waive** 38:19
**walk** 25:22
**want** 4:16 10:4,5
  15:11 22:8
  29:18 32:12
  38:16
**wanted** 10:13
  11:8 12:6 28:4
**wants** 11:5
**warning** 5:14
**wasn't** 17:19
  24:22 28:11
  30:1
**way** 7:25 10:10
  11:15 14:9,12
  14:13,19 15:1
  16:24 17:4
  26:7 31:5 34:1
  34:4 37:24
**Wednesday** 3:7
  17:11
**week** 6:4 13:14
  17:14 35:12
**welcome** 32:3
**went** 5:6,22 8:13

9:6 10:1 11:11
  12:12 13:20
  15:24 17:9,13
  17:21 18:14
  21:18 28:14
  34:16,21 35:11
  35:16
**West** 4:10 23:22
**we'll** 5:3 38:20
  38:22
**we're** 21:20
  32:13
**we've** 22:22
**whatnot** 9:18,24
**wheel** 37:4
**wheelchair** 9:15
  9:19 28:24
**wheelchairs**
  37:16,20
**wheels** 21:6,7
  29:24 36:6
**wife** 7:19 8:10
  11:1,4,6,10,24
  12:1,2 14:6
  18:15 19:3,18
  21:17 27:5
  34:8,11,12
  36:1 38:10
**wife's** 8:5,6
**Wireless** 10:19
  19:17
**withdraw** 36:16
**witness** 20:16,18
  22:4 26:23
  32:3 38:23
  40:8 42:7,9
**words** 5:5 18:22
**work** 5:7 12:4
  12:15,16,17,25
  13:1 17:10,16
  17:17,24 20:22
  33:16 34:9,11
**workday** 17:9
**working** 17:6
  25:17 26:18
**works** 34:12
**wouldn't** 36:1
**WRITE** 41:3

| **X** |
| --- |
| **X** 2:1 |

| **Y** |
| --- |
| **Yea** 27:10 |

**year** 6:25 23:10
**years** 4:12 9:16
  11:25 12:24
  26:14,24 27:4
  27:5,7,8

| **0** |
| --- |
| **044326** 1:5 |

| **1** |
| --- |
| **1** 3:5,22 39:8 |

**10:20** 1:25
**11:00** 1:25
**15** 42:4
**1600** 3:23

| **2** |
| --- |
| **2004** 7:2 32:10 |

  33:6
**2005** 6:25 32:10
  32:25 33:4
  35:17
**2006** 1:24 2:3
  3:7 39:18 40:9
  42:4

| **3** |
| --- |
| **30** 42:16 |

**30th** 32:25 33:4
**32** 2:7
**33301** 3:23
**33408** 3:17 42:3
**33412** 4:10
**38** 39:8

| **4** |
| --- |
| **4** 2:6 |

**41** 2:14
**42** 2:13

| **7** |
| --- |
| **7** 1:24 2:3 |

**7th** 3:7
**75** 5:21

| **X** |
| --- |
| **X** 2:1 |

| **8** |
| --- |
| **840** 3:5,16 42:2 |

| **9** |
| --- |
| **9:05cv80689** 1:4 |

**9:10** 33:1
**9765** 4:9



• Order status    • Your account    • Wish list

Store locator          On sale          Research library
• Weekly Ad            Outlet store     Rebate center

| PHONES & RADIO COMMUNICATIONS | PORTABLE MUSIC | CAMERAS & CAMCORDERS | POWER & BATTERIES | HOME ENTERTAINMENT | CABLES, PARTS & CONNECTORS | CAR | HOME & OFFICE | COM |

Search ›                                        in   Entire site

You are in › Home  › Store locator  › Results for west palm beach, FL

# Store locator results

« Back to store locator

RadioShack stores nearest to city **west palm beach**

Show 20    items per page   **Go**

| Store name | Distance | Address | Map |
|---|---|---|---|
| **W PALM BEACH MALL**<br>01-8802 \| 561-683-1502 | 0.0 Miles | 1801 PALM BEACH LAKES BLV<br>WEST PALM BEACH , FL 33401 | Get map |
| **W PALM BEACH CROSS CTY PL**<br>01-8946 \| 561-684-1131 | 1.7 Miles | CROSS COUNTY PLAZA<br>4348 OKEECHOBEE BVD H-100<br>W PALM BEACH , FL 33409 | Get map |
| **W PALM BEACH-SHPS OF PALM**<br>01-8994 \| 561-582-0322 | 3.5 Miles | SHOPPES OF PALM COAST<br>7713 S DIXIE HWY<br>W PALM BEACH , FL 33405 | Get map |
| **W PALM BEACH-K MART**<br>01-8818 \| 561-967-4791 | 5.3 Miles | 4640 FOREST HILL BLVD<br>W PALM BEACH , FL 33415 | Get map |
| **LAKE WORTH-TOWN COUNTRY**<br>01-8912 \| 561-588-6767 | 6.8 Miles | TOWN & COUNTRY SHOP CTR<br>1906 LAKE WORTH ROAD<br>LAKE WORTH , FL 33461 | Get map |
| **ROYAL PALM BEACH-VILLAGE**<br>01-9546 \| 561-798-8292 | 8.0 Miles | VILLAGE ROYALE SHOPPING<br>1145 ROYAL PALM BCH BLVD<br>ROYAL PALM BEAC , FL 33411 | Get map |
| **GREENACRES-LAKE WORTH**<br>01-8937 \| 561-968-3667 | 9.2 Miles | 6085 LAKE WORTH RD<br>GREENACRES , FL 33463 | Get map |
| **LAKE WORTH-PINEWOOD SQ**<br>01-9848 \| 561-642-7493 | 9.2 Miles | PINEWOOD SQUARE<br>6316 LANTANA RD BAY #41<br>LAKE WORTH , FL 33463 | Get map |
| **PALM BEACH GARDEN**<br>01-8995 \| 561-775-0701 | 9.4 Miles | 3101 PGA BLVD #O-203<br>PALM BCH GARDEN , FL 33410 | Get map |
| **PALM BEACH GARDENS-N LAKE**<br>01-9806 \| 561-775-7883 | 9.4 Miles | 4210 NORTHLAKE BLVD<br>PALM BEACH GRDN , FL 33410 | Get map |



> Home > Find a Store

## Find a Store   Print this page

To find the Cingular stores closest to you—including stores formerly exclusive to AT&T Wireless customers—enter your information below and select Submit.

**NOTE: You must enter a City and State OR ZIP code. For Puerto Rico and the US Virgin Islands, please use the ZIP code only.**



★ Starting location ● Nearest store locations

| | STORE ADRESSES | PHONE NUMBER | DISTANCE | DIRECTIONS |
|---|---|---|---|---|
| 1. | **Cingular Wireless** 1880 OKEECHOBEE BOULEVARD West Palm Beach, FL 33409, \|Equipment Upgrade\|Prepaid Payments\|Bill Payments - Credit Card Only | (561) 687-8600 | 1.69 miles | |
| 2. | **Cingular Wireless** 1889 A Palm Beach Lakes Blvd West Palm Beach, FL 33409, USA \|Equipment Upgrade\|Prepaid Payments\|Bill Payments - All | (561) 478-7344 | 2.32 miles | |
| 3. | **Cingular Wireless Authorized Retailer** 2505-H Okeechobee Blvd West Palm Beach, FL 33409, USA \|Equipment Upgrade\|Prepaid Payments\|Bill Payments - Credit Card Only | (561) 242-0050 | 2.35 miles | |
| 4. | **Cingular Wireless Authorized Retailer** 4085 N Haverhill Rd West Palm Beach, FL 33417, USA \|Equipment Upgrade\|Prepaid Payments\|Bill Payments - Credit Card Only | (561) 616-4111 | 4.29 miles | |
| 5. | **Cingular Wireless Authorized** | | | |

Retailer
3276 S Military Trail
Lake Worth, FL 33463, USA
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - Credit
Card Only    (561) 615-0808    7.02 miles

6. **Cingular Wireless Authorized Retailer**
4373 Northlake Blvd
Palm Beach Gardens, FL 33410, USA
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - Credit
Card Only    (561) 776-5400    7.22 miles

7. **Cingular Wireless Authorized Retailer**
6748 Forest Hill Blvd
Greenacres, FL 33413,
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - Credit
Card Only    (561) 439-1222    7.39 miles

8. **Cingular Wireless Authorized Retailer**
5177 Lake Worth Rd
Greenacres, FL 33463, USA
|Prepaid - Payments|Bill
Payments - Credit Card Only    (561) 966-6069    7.96 miles

9. **Cingular Wireless Authorized Retailer**
6470 Lakeworth Rd
Lake Worth, FL 33463, USA
|Bill Payments - Credit Card Only    (561) 296-1309    8.76 miles

10. **Cingular Wireless**
3101 PGA BOULEVARD
Palm Beach Gardens, FL 33410,
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - Credit
Card Only    (561) 776-9446    9.16 miles

11. **Cingular Wireless**
563 N STATE ROAD 7
Bldg 3
Royal Palm Beach, FL 33411,
|Bill Payments - All    (561) 793-3303    9.41 miles

12. **Cingular Wireless Authorized Retailer**
7100 Fairway Drive
No 36
Palm Beach Gardens, FL 33418, USA
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - Credit
Card Only    (561) 799-6000    9.75 miles

13. **Cingular Wireless Authorized Retailer**
4750 N Congress Avenue
No 103
Boynton Beach, FL 33462, USA
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - Credit
Card Only    (561) 965-7559    10.15 miles

14. **Cingular Wireless**
2205 State Road 7
Suite 300
Wellington, FL 33414, USA
|Equipment Upgrade|Prepaid    (561) 383-6325    10.43 miles

Payments|Bill Payments - Credit
Card Only

15. **Cingular Wireless Authorized Retailer**
9859 Lake Worth Rd
Lake Worth, FL 33467, USA
|Equipment Upgrade|Prepaid -
Payments

(561) 296-1440 — 11.46 miles

16. **Cingular Wireless Authorized Retailer**
4956 Le Chalet Blvd
Suite 16
Boynton Beach, FL 33436, USA
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - Credit
Card Only

(561) 733-8163 — 11.85 miles

17. **Cingular Wireless Authorized Retailer**
11987 Southern Blvd
Royal Palm Beach, FL 33411,
USA
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - Credit
Card Only

(561) 793-7449 — 12.14 miles

18. **Cingular Wireless Authorized Retailer**
1209 Main St
Suite 109
Jupiter, FL 33458, USA
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - Credit
Card Only

(561) 296-5454 — 12.61 miles

19. **Cingular Wireless Authorized Retailer**
801 N Congress Ave
Suite 1019
Boynton Beach, FL 33426,
|Bill Payments - Credit Card Only

(561) 733-2221 — 12.67 miles

20. **Cingular Wireless Authorized Retailer**
8927 Hypoluxo Rd
Lake Worth, FL 33467,
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - Credit
Card Only

(561) 868-0808 — 13.28 miles

21. **Cingular Wireless**
149 N Congress Ave
Boynton Beach, FL 33426, USA
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - All

(561) 732-1114 — 13.29 miles

22. **Cingular Wireless Authorized Retailer**
13860 Wellington Trace
No 12
Wellington, FL 33414, USA
|Equipment Upgrade|Prepaid -
Payments

(561) 333-8284 — 13.65 miles

23. **Cingular Wireless**
201 N US Hwy 1
Suite E2
Jupiter, FL 33477,
|Equipment Upgrade|Prepaid -
Payments|Bill Payments - All

(561) 748-0588 — 15.31 miles

24. **Cingular Wireless Authorized Retailer**

75 E Indiantown Rd
Jupiter, FL 33477.
|Equipment Upgrade|Prepaid
Payments|Bill Payments - Credit
Card Only
(561) 741-2911 15.36 miles

25. **Cingular Wireless Authorized Retailer**
6390 W Indiantown Rd
Jupiter, FL 33458, USA
|Equipment Upgrade|Prepaid
Payments
(561) 744-9148 15.93 miles

26. **Cingular Wireless Authorized Retailer**
12040 S Jog Rd
Suite 6
Boynton Beach, FL 33437, USA
|Bill Payments - Credit Card Only
(561) 364-9680 16.11 miles

27. **Cingular Wireless**
5859 W Atlantic Blvd
Delray Beach, FL 33484, USA
|Equipment Upgrade|Prepaid
Payments|Bill Payments - All
(561) 638-3550 18.70 miles

28. **Cingular Wireless**
1000 Linton Blvd
Suite A-4
Delray Beach, FL 33432, USA
|Equipment Upgrade|Prepaid
Payments|Bill Payments - All
(561) 272-3811 19.15 miles

Show more stores near this location.

Start a new store search.



Start address: **Florida Power & Light Co**
**700 Universe Blvd, Juno Beach, FL 33408**
End address: **3101 PGA Blvd**
**Palm Beach Gardens, FL 33410**
Distance: **2.5 mi (about 3 mins)**



©2006 Google - Map data ©2006 NAVTEQ™ - Terms of Use

1. Head **east** from **Universe Blvd** - go **0.2 mi**
2. Turn **right** at **US-1 S** - go **1.0 mi**
3. Turn **right** at **PGA Blvd** - go **1.3 mi**

These directions are for planning purposes only. You may find that construction projects, traffic, or other events may cause road conditions to differ from the map results.

Map data ©2006 NAVTEQ™, Tele Atlas



EXHIBIT
D
(COMPOSITE)



**Start address:** **Florida Power & Light Co**
**700 Universe Blvd, Juno Beach, FL 33408**
**End address:** **4250 Northlake Blvd**
**Palm Beach Gardens, FL 33410**
**Distance:** **6.4 mi (about 10 mins)**



©2006 Google - Map data ©2006 NAVTEQ™ - Terms of Use

1. Head **east** from **Universe Blvd** - go **0.2 mi**
2. Turn **right** at **US-1 S** - go **1.0 mi**
3. Turn **right** at **PGA Blvd** - go **2.2 mi**
4. Take the **I-95 S** ramp to **W Palm Bch** - go **2.4 mi**
5. Take the **Northlake Blvd** exit **77** to **(CR-809A)** - go **0.2 mi**
6. Take the **Northlake Blvd** ramp - go **0.1 mi**
7. Continue on **Northlake Blvd** - go **0.2 mi**
8. Make a **U-turn** at **Northlake Blvd** - go **0.1 mi**

These directions are for planning purposes only. You may find that construction projects, traffic, or other events may cause road conditions to differ from the map results.

Map data ©2006 NAVTEQ™ Tele Atlas

http://local.google.com/                                              6/12/2006

KUBICKI DRAPER   ne East Broward Boulevard , Suite 1600 • Fort Lauder'  Florida 33301 • Tel. (954) 768-0011

http://www.thegardensmall.com/index.cfm?fuseaction=directory.flash&

THE GARDENS MALL

Join Our eNews & You Could Win $100!

**561-691-4588  QUIKSILVER**
**561-624-0344  REGIS HAIRSTYLISTS**
**561-694-7909  RUBY TUESDAY**
**561-694-9009  SAKS FIFTH AVENUE**
**561-627-0082  SALAD SENSATIONS**
**561-626-7782  SALON CIELO AND SPA**

**Beauty, Health and Optical**

Home ~ Login ~ Contact Us ~ Tenants ~ Privacy Policy ~ View Intro



EXHIBIT
E

6/19/2006

Page 1 of 2

## Case Selection Page

|  | Case Number | Style | Location |
|---|---|---|---|
| 1) | 2:04cv14197 | Fox v. Stuart Center | 2285 S. Federal Highway, Stuart |
| 2) | 2:04cv14199 | Fox v. San Joaquin Corp. | 4461 SE Federal Highway, Stuart |
| 3) | 2:04cv14200 | Fox v. Sherwin Williams | 2880 SE Federal Highway, Stuart |
| 4) | 2:04cv14201 | Fox v. Federal Plaza Assoc. | 1926 SE Federal Highway, Stuart |
| 5) | 2:04cv14202 | Fox v. Plaza South Partners | 6538 SE Federal Highway, Stuart |
| 6) | 2:04cv14211 | Fox v. Scott Group, Inc. | 2523 SE Federal Highway, Stuart |
| 7) | 2:04cv14212 | Fox v. Indian Street | 3259 SE Federal Highway, Stuart |
| 8) | 2:04cv14213 | Fox v. Wolfe | 6400 SE Federal Highway, Stuart |
| 9) | 2:04cv14214 | Fox v. Salerno Village | 6027 SE Federal Highway, Stuart |
| 10) | 2:04cv14215 | Fox v. McNeil Estates, Inc. | 4320 SE Federal Highway, Stuart |
| 11) | 2:04cv14216 | Fox v. Super Stop Petroleum | 4504 S. Federal Highway, Stuart |
| 12) | 9:03cv80219 | Fox v. Abbey Road Plaza | 10800 Military Trail, Palm Beach Gardens |
| 13) | 9:03cv80220 | Fox v. 4500 PGA Blvd. | 4500 PGA Blvd., Palm Beach Gardens |
| 14) | 9:03cv80358 | Fox v. Ed Napleton Jupiter | 1555 Indiantown Road, Jupiter |
| 15) | 9:03cv80416 | Fox v. Gayle A. Woods Trust | 901 W. Indiantown Road, Jupiter |
| 16) | 9:03cv80417 | Fox v. Lake Washington | 1695 W. Indiantown Road, Jupiter |
| 17) | 9:04cv80069 | Fox v. MDC PGA Plaza, LLC | 2506 PGA Blvd., Palm Beach Gardens |
| 18) | 9:04cv80070 | Fox v. High Rock Lake Co. | 7099 Lake Worth Road, Lake Worth |
| 19) | 9:04cv80071 | Fox v. San Vincente Investm | 6653 Lake Worth Road, Lake Worth |
| 20) | 9:04cv80072 | Fox v. Del Viso, LLC | 4507 Lake Worth Road, Lake Worth |
| 21) | 9:04cv80363 | Fox v. 2000 Pbl Venture | 2000 Palm Beach Lakes Blvd., W. Palm Beach |
| 22) | 9:04cv80364 | Fox v. Ichiban Properties | 2835 N. Military Trail, West Palm Beach |
| 23) | 9:04cv80365 | Fox v. Westchester Square | 2800 N. Military Trail, West Palm Beach |
| 24) | 9:04cv80366 | Fox v. Cross Country Assoc | 4252 Okeechobee Blvd., West Palm Beach |
| 25) | 9:04cv80367 | Fox v. Fu Hwa Iv | 2845 N. Military Trail, West Palm Beach |
| 26) | 9:04cv80550 | Fox v. P.B.G.S., LTD | 4200 Northlake Blvd., Palm Beach Gardens |
| 27) | 9:04cv80551 | Fox v. South Atlantic Pro | 4047 Okeechobee Blvd., West Palm Beach |
| 28) | 9:04cv80552 | Fox v. Sil-Fir Corporation | 2381 Palm Beach Lakes Blvd., W. Palm Beach |
| 29) | 9:04cv80553 | Fox v. Okee Plaza, Ltd. | 4275 Okeechobee Blvd., West Palm Beach |
| 30) | 9:04cv80554 | Fox v. BCI Associates | 600 Village Blvd., West Palm Beach |
| 31) | 9:04cv80555 | Fox v. Ethan Allen, Inc. | 2223 Palm Beach Lakes Blvd., W. Palm Beach |
| 32) | 9:04cv80556 | Fox v. Royal Petroleum, Inc. | 4111 Okeechobee Blvd., West Palm Beach |
| 33) | 9:04cv80598 | Fox v. 12th Street Association | 2939 N. Military Trail, West Palm Beach |
| 34) | 9:04cv80599 | Fox v. Okee, LLE | 4587 Okeechobee Blvd., West Palm Beach |
| 35) | 9:04cv80600 | Fox v. Forum Square | 1675 Forum Place, West Palm Beach |
| 36) | 9:04cv80601 | Fox v. Metropolitan Life | 971 Village Blvd., West Palm Beach |
| 37) | 9:04cv80602 | Fox v. Carrabba's Italian | 2224 Palm Beach Lakes Blvd., W. Palm Beach |
| 38) | 9:04cv80603 | Fox v. Forum Shoppes, Inc. | 1649 Forum Place, West Palm Beach |
| 39) | 9:04cv80701 | Fox v. R&L Partnership | 4132 Blue Heron Blvd, Riviera Beach |
| 40) | 9:04cv80762 | Fox v. Wheelock Family | 6658 N. Military Trail, Riviera Beach |

1 of 3

EXHIBIT

F

|  | **Case Number** | **Style** | **Location** |
|---|---|---|---|
| 41) | 9:04cv80763 | Fox v. Royal Plaza North | 11308 Okeechobee Blvd., Royal Palm Beach |
| 42) | 9:04cv80764 | Fox v. Ives Rentals, LLC | 6598 N. Military Trail, Riviera Beach |
| 43) | 9:04cv80765 | Fox v. Andrade Associates | 1301 Royal Palm Beach Blvd., Royal Palm Bch |
| 44) | 9:04cv80766 | Fox v. Second Chance Ventu | 11452 Okeechobee Blvd., West Palm Beach |
| 45) | 9:04cv80767 | Fox v. Village Royale | 1105 Royal Palm Beach Blvd., Royal Palm Bch |
| 46) | 9:04cv80799 | Fox v. Keller | 6758 N. Military Trail, Riviera Beach |
| 47) | 9:04cv80800 | Fox v. G&D Eyecare | 2021 Palm Beach Lakes Blvd., W. Palm Beach |
| 48) | 9:04cv80801 | Fox v. Payne | 2900 Okeechobee Blvd., West Palm Beach |
| 49) | 9:04cv80802 | Fox v. Denny's Realty, Inc. | 4113 Blue Heron Blvd, Riviera Beach |
| 50) | 9:04cv80803 | Fox v. Kimco West Palm | 4879 Okeechobee Blvd., West Palm Beach |
| 51) | 9:04cv80804 | Fox v. L,N&N Corporation | 11482 Okeechobee Blvd., Royal Palm Beach |
| 52) | 9:04cv80810 | Fox v. Burger King | 4139 Blue Heron Blvd., Riviera Beach |
| 53) | 9:04cv80811 | Fox v. RPBE, Inc. | 1201 Royal Palm Beach Blvd., Royal Palm Bch |
| 54) | 9:04cv80812 | Fox v. L N&N Corporation | 1400 Royal Palm Beach Blvd., Royal Palm Bch |
| 55) | 9:05cv80092 | Fox v. P.B.G.S. Ltd. | 4200 Northlake Blvd., Palm Beach Gardens |
| 56) | 9:05cv80126 | Fox v. Riviera Trading Inc. | 6700 Indiantown Road, Jupiter |
| 57) | 9:05cv80127 | Fox v. Divall Insured Incom | 11340 US Hwy 1, West Palm Beach |
| 58) | 9:05cv80238 | Fox v. Elmhurst Shoppes | 1749 Military Trail, West Palm Beach |
| 59) | 9:05cv80239 | Fox v. Lake Park Shoppes | 801 N. Federal Highway, Riviera Beach |
| 60) | 9:05cv80277 | Fox v. Woodhaven, LLC | 4064 Forest Hill Blvd., West Palm Beach |
| 61) | 9:05cv80278 | Fox v. MPI Country Grove | 13685 S. Military Trail, West Palm Beach |
| 62) | 9:05cv80316 | Fox v. T&B Services, Inc. | 200 US Highwy 1, North Palm Beach |
| 63) | 9:05cv80317 | Fox v. Delgato | 11350 US Highway 1, Palm Beach Gardens |
| 64) | 9:05cv80318 | Fox v. Florescue & Andrews | 1851 Broadway, Riviera Beach |
| 65) | 9:05cv80382 | Fox v. Cromwell Properties | 804 US Highway, 1, Lake Park |
| 66) | 9:05cv80383 | Fox v. RB SITGO, LLC | 1201 Broadway, Riviera Beach |
| 67) | 9:05cv80384 | Fox v. CMBB, Inc. | 211 N. Federal Highway, Lake Park |
| 68) | 9:05cv80687 | Fox v. Potter | 229 Indiantown Road, Jupiter |
| 69) | 9:05cv80688 | Fox v. Karin Imports, Inc. | 7100 N. Military Trail, West Palm Beach |
| 70) | 9:05cv80689 | Fox v. Morris Jupiter | 75 E. Indiantown Road, Jupiter |
| 71) | 9:05cv80755 | Fox v. Branch | 185 E. Indiantown Road, Jupiter |
| 72) | 9:05cv80756 | Fox v. Fishermans Wharf | 287 E. Indiantown Road, Jupiter |
| 73) | 9:05cv80757 | Fox v. Jupiter Marketplace | 225 E. Indiantown Road, Jupiter |
| 74) | 9:05cv80894 | Fox v. Spiegel | 2100 45th Street, West Palm Beach |
| 75) | 9:05cv80895 | Fox v. Spiegel | 1700 45th Street, West Palm Beach |
| 76) | 9:05cv80896 | Fox v. North Village Realty | 3111 45 Street, West Palm Beach |
| 77) | 9:05cv80924 | Fox v. Sunset Centres | 9760 S. Military Trail, Boynton Beach |
| 78) | 9:05cv80925 | Fox v. Sovereign TB LLC | 9854 Military Trail, Boynton Beach |
| 79) | 9:05cv80926 | Fox v. Meiselman | 11190 S. Military Trail, Boynton Beach |
| 80) | 9:05cv80927 | Fox v. LW JOG S.C. Ltd. | 6400 Lake Worth Road, West Palm Beach |
| 81) | 9:05cv80928 | Fox v. Florimar Boynton | 9846 S. Military Trail, Boynton Beach |
| 82) | 9:05cv80829 | Fox v. Buttonwood Plaza, Ltd. | 3060 Jog Road, Greenacres |
| 83) | 9:05cv80960 | Fox v. Shoppes of Atlantis | 5805 S. Congress Avenue, Atlantis |

|  | **Case Number** | **Style** | **Location** |
|---|---|---|---|
| 84) | 9:05cv80961 | Fox v. Warbanks Properties | 3747 S. Military Trail, Lake Worth |
| 85) | 9:05cv80962 | Fox v. Boynton Plaza | 111 N. Congress Avenue, Boynton Beach |
| 86) | 9:05cv80963 | Fox v. Kenney | 3095 S. Military Trail, Lake Worth |
| 87) | 9:05cv80964 | Fox v. Sage III, Inc. | 1440 N. Congress Avenue, Delray Beach |
| 88) | 9:05cv81085 | Fox v. GLM Holding, LLC | 3100 S. Congress Avenue, Boynton Beach |
| 89) | 9:05cv81086 | Fox v. Sage Properties, Inc. | 1445 N. Congress Avenue, Delray Beach |
| 90) | 9:05cv81087 | Fox v. Lake Worth Center LL | 4558 Lake Worth Road, Lake Worth |
| 91) | 9:05cv81088 | Fox v. Nathan Properties | 955 S. Congress Avenue, Delray Beach |
| 92) | 9:06cv80279 | Fox v. Carefree Park Corp. | 2100 10th Avenue North, Lake Worth |
| 93) | 9:06cv80280 | Fox v. Deltex Realty Corp. | 2172 10th Avenue North, Lake Worth |
| 94) | 9:06cv80281 | Fox v. Lake Worth Waterside | 2407 10th Avenue North, Lake Worth |
| 95) | 9:06cv80282 | Fox v. Global Management | 2121 10th Avenue North, Lake Worth |
| 96) | 9:06cv80283 | Fox v. Lantex Realty Corp. | 3274 Military Trail, Lake Worth |
| 97) | 9:06cv80364 | Fox v. Elwill Associates | 1771 Congress Avenue, Palm Springs |
| 98) | 9:06cv80365 | Fox v. Smith | 3900 S. Congress Avenue, Lake Worth |
| 99) | 9:06cv80366 | Fox v. Denny's Realty Inc. | 1507 Belvedere Road, North Palm Beach |
| 100) | 9:06cv80367 | Fox v. Regenstreif | 2911 Congress Avenue, Palm Springs |
| 101) | 9:06cv80368 | Fox v. Devon Investment, Inc. | 4469 S. Congress Avenue, Lake Worth |
| 102) | 9:06cv80412 | Fox v. KG Associates | 1977 S. Congress Avenue, Palm Springs |
| 103) | 9:06cv80413 | Fox v. Lovak, Inc. | 3001 S. Congress Avenue, Palm Springs |
| 104) | 9:06cv80414 | Fox v. Congressional Develo | 3755 S. Congress Avenue, Palm Springs |
| 105) | 9:06cv80415 | Fox v. Vultaggio | 2480 S. Congress Avenue, Palm Springs |
| 106) | 9:06cv80416 | Fox v. ADF Property Company | 2800 S. Congress Avenue Palm Springs |