UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80689-CIV-MARRA

ALLEN FOX,

      Plaintiff,

vs.

MORRIS JUPITER ASSOCIATES,
a Limited Liability Company

      Defendant.

_____/

## **OPINION AND ORDER**

THIS CAUSE is before the Court upon Defendant Morris Jupiter Associates, L.L.C.'s

Motion for Summary Judgment or to Dismiss for Lack of Subject Matter Jurisdiction.  (DE 32).

Plaintiff subsequently filed his Memorandum in Opposition to Defendant's Motion, (DE 39), and

Defendant then filed a Reply.  (DE 42.)  Plaintiff has also filed a Surreply Memorandum.  (DE

51.)  The Motions are now fully briefed and ripe for review.  The Court has considered the

motions and is otherwise fully advised in the premises.

### I.  Background

On July 25, 2005, Plaintiff Allen Fox ("Plaintiff") filed a Complaint against Morris

Jupiter Associates, L.L.C. ("Defendant"), alleging disability discrimination under Title III of the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq*.  (Compl. ¶ 1.)  Plaintiff

asserts that this Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331 and 1343.

(Compl. ¶ 1.)  Plaintiff seeks injunctive relief, attorney's fees, and costs.  (Compl. ¶ 1.)

1

Plaintiff suffers from the effects of infantile paralysis, or childhood polio. (Compl. ¶ 2.) This condition has left Plaintiff with limited use of his legs; for many of his daily activities, Plaintiff requires the assistance of a wheelchair. (Compl. ¶ 2.) Plaintiff alleges that he is "disabled" as defined by 42 U.S.C. §12102(2), because Plaintiff's condition "substantially limits" his "major life activity" of walking. (Compl. ¶ 2.)

Plaintiff resides in West Palm Beach, Florida. (Allen Fox Dep. 4, Mar. 27, 2006.) At some unspecified time in the past,[1] Plaintiff and his wife began visiting Concourse Village Plaza ("Center" or "Facility"), a shopping center located at 75 East Indiantown Road, Jupiter, Florida. (Compl. ¶ 2-3; Allen Fox Dep. 27, Mar. 7, 2006.) When he began patronizing the stores at Concourse Village Plaza, Plaintiff was employed in Jupiter, Florida. (Fox Dep. 12.) Plaintiff also stated that he has family living in the vicinity of Concourse Village Plaza. (Fox Dep. 11.) Plaintiff estimated that Concourse Village Plaza is about twenty-five miles from his residence. (Fox Dep. 10.) Concourse Village Plaza is owned by Defendant. (Compl. ¶ 3.)

Plaintiff alleges he observed several violations of the ADA at Concourse Village Plaza, including insufficient parking for disabled individuals, limited access to the shopping facilities from the parking lot, barriers preventing entry into individual units within the facility, and inaccessible restrooms. (Compl. ¶ 14.) Prior to 2004 or 2005, Plaintiff was accompanied by his wife when visiting Concourse Village Plaza. (Fox Dep. 6-8.) With the assistance of his wife, Plaintiff was able to access the stores, notably Radio Shack. (Fox Dep. 21.) However, Plaintiff stated that he attempted to visit Concourse Village Plaza by himself on at least two occasions.

---

[1]Plaintiff estimates he has been visiting the shopping plaza "for more than 7 years." (Fox Aff. ¶ 1.)

(Fox Dep. at 28.) On his first attempt, he stated that he successfully navigated one of the wheelchair-accessible paths from the parking lot to the storefront areas and reached the door to the Radio Shack outlet. (Fox Dep. 29.) He could not enter the store, he explained, because he could not maneuver over the door threshold while, at the same time, holding the door open. (Fox Dep. 29.) Plaintiff claimed this incident led him to file the instant action.(Fox Dep. 29.)

Subsequent to that visit, in either 2004 or 2005, Plaintiff returned to the Concourse Village Plaza, again with the stated intention of visiting the Radio Shack outlet. (Fox Dep. 8.) Plaintiff alleges he made a visual inspection of the Defendant's Facility, specifically the wheelchair-accessible routes from the parking lot to the storefront areas and the high doorway threshold to each unit of the Facility. (Fox Dep. 10, 15.) Plaintiff remained in his car and did not attempt to enter the Radio Shack or any other store in the Center. (Fox Dep. 15.) While he claimed he knew of the barriers from prior visits, Plaintiff stated he drove to Concourse Village Plaza hoping the barriers to his access had been removed. (Fox Dep. 15) Since the barriers had not been removed, he stated that he could not access the Radio Shack store on that occasion. (Fox Dep. 15.)

Plaintiff has articulated a desire to continue patronizing the shops at Concourse Village Plaza, in particular the Radio Shack and Cingular Wireless stores, because the center is "conveniently located near [his] work and relatives." (Fox Aff. ¶ 2.) Further, Plaintiff stated that he faces barriers to access at other Radio Shack and Cingular Wireless outlets. (Fox Aff. ¶ 4.) Plaintiff prefers the Radio Shack store at Concourse Village Plaza and intends to return to that location because he is "familiar and comfortable with their inventory location." (Fox Aff. ¶ 4.) However, Plaintiff no longer works in Jupiter, Florida; his current employer (Florida Power and

3

Light) is located in Juno Beach, Florida.  (Fox Dep. 12.)

Plaintiff argues that these barriers to access "deny" or "diminish" his ability to visit the property.  (Compl. ¶ 18.)  Further, as long as these barriers remain in place, he argues that he continues to suffer from discrimination as defined by the ADA.  (Compl. ¶19.)

Defendant, owner of Concourse Village Plaza, denies any allegation that the shopping center stores are not accessible to individuals with disabilities.  (Ans. ¶ 8, 14.)

## II.  Standard of Review

This Court will treat a motion for summary judgment asserting a lack of subject matter jurisdiction as a motion to dismiss under Fed. R. Civ. P. 12(b)(1).  *Goodman v. Sipos*, 259 F.3d 1327, 1331 n.6 (11th Cir. 2001) (explaining that "summary judgment pursuant to Rule 56 is not the correct procedure for dismissing based on lack of subject matter jurisdiction" because summary judgment is a judgment on the merits).

Attacks on subject matter jurisdiction based on Rule 12(b)(1) of the Federal Rules of Civil Procedure come in two forms – facial attacks and factual attacks.  In a facial attack, the Court looks only at the complaint.  *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  Like a Rule 12(b)(6) motion, the Court takes all of the allegations in the complaint as true to determine whether a plaintiff has adequately alleged a basis for subject matter jurisdiction.  *Id.*

A factual attack, on the other hand, "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered."  *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507,

4

511 (5th Cir. 1980).[2]  When a plaintiff makes a factual attack, he is challenging the *accuracy* of

the allegations, not their sufficiency.  *See, e.g., Valentin v. Hospital Bella Vista*, 254 F.3d 358,

364 (1st Cir. 2001).  Such attacks may be made under Rule 12(b)(1) at any time, and the plaintiff

bears the burden of proving that jurisdiction is appropriate.  *Menchaca*, 613 F.2d at 511.  This

Court is free to make credibility determinations when reaching a decision, so long as the factual

attack does not implicate an element of the cause of action.  *Lawrence*, 919 F.2d at 1529

("[T]here is substantial authority that the trial court is free to weigh the evidence and satisfy itself

as to the existence of its power to hear the case.").

In this case, Defendant is not alleging that Plaintiff's complaint is insufficient; rather,

Defendant argues that the Plaintiff cannot support the allegations in the complaint.  Thus, the

Defendant has raised a factual attack to subject matter jurisdiction.


### III.  Discussion

#### A.  Plaintiff's Standing to Bring the Instant Litigation

Defendant challenges Plaintiff's standing to bring the instant action.  (Def. Mot. 4.)  To

establish standing, a plaintiff must demonstrate three constitutional requirements: the plaintiff

has suffered an "injury in fact"; a causal connection exists between the plaintiff's injury and the

defendant's conduct; and the injury must be redressed by a favorable judgment.  *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Past discrimination suffered by an individual in violation of the ADA gives rise to a

---

[2]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 & 1209 (11th Cir. 1981) (*en banc*),
the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered
prior to October 1, 1981.

cognizable injury in fact. *See Access Now, Inc. v. South Florida Stadium Corp.*, 161 F. Supp. 2d 1357, 1364 (S.D. Fla. 2001) ("Discrimination suffered in violation of the ADA is an injury sufficient to give rise to an Article III case or controversy."). As required by Title III of the ADA, Plaintiff has alleged sufficient facts to show that he is disabled under 42 U.S.C. §12102(2) – he is substantially limited by the effects of infantile paralysis in his major life activity of walking. In addition, Defendant's Concourse Village Plaza is a place of public accommodation, and Plaintiff was denied full and equal treatment at Concourse Village Plaza on account of his disability.

A plaintiff seeking an injunction against future violations of the ADA must allege a "real and immediate – as opposed to a merely conjectural or hypothetical – threat of *future* injury." *Wooden v. Board of Regents of University System of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001). When injunctive relief is sought, past exposure to illegal conduct, without a continuing threat of future harm, is insufficient to show a *present* case or controversy. Injury in the abstract is not sufficient. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983). Past exposure to illegal conduct can still be "evidence bearing on whether there is a real and immediate threat of repeated injury." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).

In the context of future violations of the ADA, courts have generally focused on four factors when deciding the likelihood that a plaintiff will return to the defendant's facility and suffer a repeat injury: "(1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plan to return, and (4) the plaintiff's frequency of travel near defendant." *Hubbard v. Rite Aid Corp.*, 433 F. Supp. 2d 1150, 1162-63 (S.D. Cal. 2006); *see also Pickern v. Holiday*

6

*Quality Foods, Inc.*, 293 F. 3d 1133, 1138 (9th Cir. 2002) (holding that past visits to a store, actual knowledge of barriers to access at the store, and statements that a plaintiff prefers a particular store is sufficient to establish actual or imminent injury); *Steger v. Franco, Inc.*, 228 F.3d 889, 893-95 (8th Cir. 2000) (holding that a disabled plaintiff may have standing even though he only entered the facility on one occasion); *Access Now*, 161 F. Supp. 2d at 1365 ("[Plaintiff's] personal history of attendance and continued residence in the area support his contention that he will likely patronize the Stadium in the future."). The inquiry does not require a plaintiff to continue to make "futile" future attempts to enter the facility. Instead, as one court explained, "the existence of a private right of action under section 12188(a)(1) does not depend upon how many attempts a plaintiff has made to overcome a discriminatory barrier, but, rather, upon *whether the barrier remains in place.*" *Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305 (1st Cir. 2003) (emphasis added).

Turning to the instant litigation, Plaintiff resides approximately twenty-five miles from Defendant's property. While twenty-five miles might seem to be a long distance to go to shop at a small electronics boutique, the proximity of Plaintiff's family and Plaintiff's place of employment to the property make Plaintiff's stated desire to return credible. Plaintiff has also been visiting this shopping center for several years, which militates in his favor. Plaintiff has further stated an unwavering desire to return to the location if the barriers are removed.

Defendant's arguments to the contrary are unavailing. Defendant argues that other Radio Shack and Cingular Wireless stores can be found closer to Plaintiff's residence. (Def. Mot. at 5.) This fact has no bearing on Plaintiff's intent to return to Concourse Village Plaza. Because Plaintiff *could* visit another store does not overcome his stated desire to continue to access the

7

store at Concourse Village Plaza.

Defendant also argues that Plaintiff's "drive-by" litigation tactics should cast doubt on the sincerity of Plaintiff's desire to return to Concourse Village Plaza. (Def. Mot. at 7.) This argument might be persuasive if Plaintiff had no record of visiting Concourse Village Plaza in the past. On the contrary, Plaintiff has demonstrated a history, extending back several years, of visiting the Center, making his stated desire to return credible. Plaintiff's past visits to Concourse Village Plaza bolster Plaintiff's stated desire to return and indicate more than a disingenuous attempt to proceed with litigation.

The sincerity of Plaintiff's desire to return to the Facility aside, Defendant's most powerful argument is that Plaintiff's stated desire to return is not "specific and concrete" as required by the U.S. Constitution. *Id.* at 7. Specifically, Defendant cites two cases, *Lamb v. Charlotte County*, 429 F. Supp. 2d 1302 (M.D. Fla. 2006), and *Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d 1278 (M.D. Fla. 2004), to suggest that the availability of similar services closer to the Plaintiff's residence cast doubt on a plaintiff's credibility when stating a "specific intent to return." This argument also fails. Both of these cases are distinguishable from the present litigation. In *Lamb*, the court listed several facts that led it to doubt the credibility of the plaintiff's stated desire to return. *Lamb*, 429 F. Supp. 2d at 1309-10. While one of the decisive factors was the availability of similar services closer to the plaintiff's residence, the court considered other factors not present in the instant case, including (1) the plaintiff lived about seventy-five miles from the subject property; (2) the plaintiff's contact with the property had been "infrequent"; (3) the plaintiff had not returned to the property since filing the complaint; (4) the plaintiff had no connection to the property nor family in the area; and (5) the plaintiff's

8

uncorroborated statements of an intent to return to other facilities subject to lawsuits. *Id.* Plaintiff in the present litigation lives much closer to the Facility, his past contacts with the Facility have been more than "infrequent," he has returned to the Facility since filing the complaint, and Plaintiff has family and business in the vicinity of the Facility. Reliance on *Lamb* is misplaced.

*Rodriguez* is even less helpful to Defendant. In that case, after a trial, the court concluded that the plaintiff was "evasive and willfully ignorant," he lacked a reasonable explanation for his initial visit, and "he did not convey any honest desire to return there." *Rodriguez*, 305 F. Supp. 2d at 1285. The court did not, however, explain what factors led it to these conclusions. Plaintiff's deposition testimony in the instant case cannot reasonably be termed "evasive" or "ignorant," and without a more substantial record, this Court has no reason to doubt Plaintiff's credibility given the factors listed above that weigh in Plaintiff's favor.

Defendant is correct to note that a statement that one "might" return to a property is insufficient under *Lujan* to show an immediate threat of harm. (Def. Mot. 8.) Defendant's reading of this requirement, however, would require an ADA plaintiff to take a concrete step (e.g., make a reservation or purchase tickets) before a "specific intent to return" could be demonstrated. Not all activities are amenable to such a concrete step, and standing should not be denied to an aggrieved plaintiff seeking relief under the ADA because he cannot produce tangible evidence of a specific date and time to return. One court explained, in the context of a fast food restaurant, that "specification as to a date and time of returning to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment." *Parr v. L & L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1079 (D. Haw. 2000).

The shops of a shopping plaza, like Concourse Village, are much more likely to be visited on a "spur of the moment" basis rather than by appointment.

Accordingly, on the evidence now presented, Plaintiff has standing to sue and proceed with his case.

B. Plaintiff's Standing to Challenge Barriers to Access Not Actually Encountered

In the alternative, Defendant challenges Plaintiff's standing to seek injunctive relief for the entirety of Concourse Village Plaza and requests this Court to limit Plaintiff's standing "to those areas from which he claims he was denied access." (Def. Mot. 9.) Defendant predicates his argument on the holding in *Brother v. CPL Investments, Inc.*, 317 F. Supp. 2d 1358 (S.D. Fla. 2004). In *Brother*, the plaintiff sued a hotel for disability discrimination, claiming that the hotel's wheelchair-accessible rooms presented barriers preventing his stay. *Id.* at 1362-63. The plaintiff only viewed two of the three rooms; he never inspected the third room. *Id.* at 1368. Because the plaintiff had no "actual knowledge" of the barriers in the third room, the court held that the plaintiff's standing was limited to the two rooms he viewed prior to the litigation. *Id.* The court's conclusion was buoyed by evidence at trial that the rooms were not similar in design or layout. *Id.* at 1368 n.4.

The instant case is distinguishable from *Brother*. Defendant does not suggest that the barriers to accessing other stores at Concourse Village Plaza are different from those barriers at the Radio Shack and Cingular Wireless outlets, nor does Defendant attempt to argue that Plaintiff

10

did not have "actual knowledge" of the barriers to access at other stores.[3] Plaintiff's own

deposition testimony suggests the opposite proposition – the barriers to entry at each storefront

are the same.  (Fox Dep. 19-20.)[4]

A plaintiff must have "actual knowledge" of a barrier in order to have standing to

challenge such a barrier.  *Access Now*, 161 F. Supp. 2d at 1365.  A plaintiff, however need not

confront each barrier or instance of discrimination in order to demonstrate his standing to sue so

long as he has actual knowledge of the violation.  *Id.*  "Actual knowledge" of a violation

connotes violations encountered or identified at the time of the filing of a complaint.  *Id.* at 1366

n.16.  Defendant does not dispute that Plaintiff had "actual knowledge" of certain barriers, such

---

[3]Defendant's argument is, in fact, not based on Plaintiff's standing.  While Defendant raises a question about Plaintiff's standing to pursue an injunction relative to the other units at Concourse Village Plaza, Defendant focuses his argument on "streamlining discovery and trial and obviating a number of pending discovery disputes."  Def. Mot. at 9.

[4]Q: So that I understand, the only reason you would have gone there would have been to go to Radio Shack or the Cingular Wireless store or to accompany your wife to the shoe store?
A: Well, it's possible I would have gone to the Chinese restaurant as well that's there.  I can't remember the name of it exactly, but again the same problem exists.
Q: I just need to clarify that.  Are you saying it's possible that in the past you've been to the Chinese restaurant?
A: No.
Q: What you're saying is that you have never been there, correct?
A: No, I've never been there.  I said I would have.  If I had the ability, I probably would have gone to it, since we were already there, but, no.
Q: For the record, the reason you didn't go to the Chinese restaurant when you may otherwise have is because there was some kind of a problem accessing it from your perspective?
A: Yes, sir.
Q: And what was that problem?
A: The door, threshold as well.
. . .
A: Well, I never attempted the door, but if I had been by myself, it would have created the same problem as Radio Shack.  It's impossible to hold the door and climb over the threshold.  It just doesn't work.  You end up stuck between the door and the frame.  (Fox Dep. 19-20.)

11

as the exterior accessible paths of travel, parking areas, and high thresholds present in the doorway to at least four different storefronts. With respect to the doorway thresholds, the ADA cannot be read to require a plaintiff to subject himself to repeated discrimination by attempting to cross the threshold of each individual store. Plaintiff claims to have made a visual inspection sufficient to confer "actual knowledge" of the thresholds at each storefront location. Plaintiff alleges he has previously suffered discrimination due to the high doorway thresholds and that he will continue to suffer from discrimination at Concourse Village Plaza as long as those thresholds are in place.[5]

Questions of fact exist as to the extent of Plaintiff's "actual knowledge" of barriers to access at Defendant's facility at the time he initiated his lawsuit, and those questions cannot be resolved on the present record. These questions must be resolved at trial. Accordingly, Plaintiff has standing to sue and proceed with his complaint.

### C. Attorney's Fees

Both Plaintiff and Defendant have made competing motions for this Court to rule on the issue of attorney's fees. Defendant argues that Plaintiff is not entitled to an award of attorney's fees because Plaintiff failed to notify Defendant of the potential violation prior to filing suit. (Def. Mot. 9-10.) Plaintiff counters with his own argument that he should not be precluded from

---

[5] Some courts have held that a plaintiff need not encounter all barriers nor have knowledge of all barriers to obtain relief. *See, e.g., Steger*, 228 F.3d at 894; *Pickern*, 293 F.3d at 1138. In other words, a plaintiff may have only encountered one barrier, as in *Steger*, but the injunction would apply to all barriers in existence for people with the plaintiff's particular disability. Courts in the Eleventh Circuit have been more cautious, requiring a showing of plaintiff's actual knowledge of particular barriers in order for the plaintiff to have standing to challenge those barriers. *See Access Now*, 161 F. Supp. 2d at 1365.

receiving attorney's fees if he prevails in the litigation. (Pl. Resp. 9-10.) Plaintiff also argues that Defendant should be precluded from receiving any attorney's fees because his suit is not "frivolous, unreasonable, or groundless." (Pl. Resp. 6-7.)

At this point in time, any discussion of awards of attorney's fees is premature. This Court will not entertain any discussion of attorney's fees until after a judgment has been rendered on the merits. At that time, both Plaintiff and Defendant may renew their respective motions for an award of attorney's fees.

Accordingly, both Plaintiff's and Defendant's motions for partial summary judgment for an award of attorney's fees are denied without prejudice.

## IV. Conclusion

It is hereby **ORDERED** and **ADJUDGED** as follows:

1. Defendant Morris Jupiter Associates, L.L.C.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction (DE 32) is **DENIED**;

2. Defendant Morris Jupiter Associates, L.L.C.'s Motion for Partial Summary Judgment as to Plaintiff's Standing to Seek Injunctive Relief (DE 32) is **DENIED**; and

3. Defendant Morris Jupiter Associates, L.L.C's Motion for Partial Summary Judgment

as to Attorney's Fees is **DENIED WITHOUT PREJUDICE**.

DONE AND ORDERED in Chambers at West Palm Beach, Palm Beach County, Florida,

this 21st day of September, 2007.

KENNETH A. MARRA
United States District Judge

Copies furnished to:
All Counsel of Record

14